In re: Custody of Minor Children of
Dunbar A. Rosenthal.

Argued April 30, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*Edwin D. Strite*, and with him *John W. Hoke*, for appellant.

*Edmund C. Wingerd*, for appellee.

OPINION BY CUNNINGHAM, J., July 8, 1931:

This appeal arises out of a controversy between Dunbar A. Rosenthal and Adelaide Feynman Rosenthal, divorced parents of Marjorie Rosenthal, aged seven, relative to her custody. The mother has appealed from an order of the common pleas of Franklin County, awarding the custody of the minor to her father. These circumstances gave rise to the litigation: The father and mother were married March 1, 1917, and absolutely divorced in Franklin County, November 23, 1928. They have two children, Betty Annette, born January 22, 1919, and Marjorie, September 22, 1923. During the pendency of the divorce proceedings they entered into an agreement under date of September 29, 1928, in which it was provided that the father should ''have the care, custody and maintenance'' of Betty and the mother the care and custody of Marjorie; that Betty should be permitted to visit her mother and Marjorie her father upon the

occasions and for the periods therein stipulated; and that the father should pay the mother $150. per month for the maintenance of Marjorie. The father continued to reside in Chambersburg where he has maintained a suitable home for either or both of his children; his financial resources are more than ample for their maintenance and education. Pursuant to the agreement Betty has remained with him and the mother took Marjorie to live with her in New York; her address at the time of the institution of these proceedings, was Apartment 408, Olcott Hotel, 27 W. 72nd St., where she was known as Adelaide Feynman. During the summer of 1930 the mother went to Europe and the children, with the consent of both parents, were in a camp near Kezar Falls, Me. In a letter under date of August 16, 1930, from the director of the camp the father was advised that Marjorie's conduct indicated that she had not been receiving proper training and the father, upon investigation of the conditions under which Marjorie had been living with her mother in New York, concluded that he would be justified in removing her from the custody of her mother. On August 28, 1930, he brought both children from the camp to his home in Chambersburg where they have remained. On September 6th of that year the father presented his petition to the court of common pleas of Franklin County, reciting the facts above outlined, averring the mother was not maintaining and caring for Marjorie in a proper manner but had kept her in surroundings and subjected her to influences detrimental to her welfare, and praying the court "to award to him the custody of his said two children, Betty Annette Rosenthal and Marjorie Rosenthal." A copy of the agreement of September 29, 1928, was attached to the petition. There was no occasion for including the older child, Betty, in the prayer of the petition

as the father already had undisputed custody of her and the dispute related only to the younger child.

Upon the presentation of the petition the court made an order fixing September 20, 1930, as the date for a hearing "concerning the facts alleged in the within petition and at which time all parties in interest shall have an opportunity to offer such evidence as they desire." Notice of the time and place of this hearing was directed to be given to the mother by registered mail at the above mentioned address; the registered letter containing a copy of the petition and order was returned "refused." On September 11th the mother, accompanied by a man conclusively shown by the evidence to be her paramour, motored to Chambersburg for the avowed purpose of regaining custody of Marjorie. Their actions in repeatedly driving past the Rosenthal home occasioned their temporary detention by the police. While in Chambersburg, the mother was served with a copy of the petition and notice of the time and place of hearing and the purport of the papers explained to her. On September 15th a member of the bar of Franklin County appeared in open court in behalf of the mother and requested a continuance of the hearing upon the ground that the mother had telephoned him from some point in Maine that she did not have proper time to prepare for the hearing. Upon being advised that she had been in Chambersburg on September 11th, the court refused the application. Four days later an appearance de bene esse was entered in behalf of the mother for the purpose of objecting to the jurisdiction of the court, both as to the subject matter and necessary parties. The grounds specified were: (a) that no process had been lawfully issued or served upon the mother; and (b) that the order of September 6th, entertaining the petition and fixing a hearing thereon, was beyond the power and jurisdiction of the court.

The testimony of the father and his witnesses was taken at the time fixed and in the absence of the mother, but without prejudice upon the question of jurisdiction. On November 15th the learned president judge of the court below filed an opinion holding that the court had jurisdiction to entertain the petition, hear the testimony and make an order deciding in its "sound discretion as to which parent, if either, the custody" of the child should be committed, and, in the light of the evidence, awarded the custody of Marjorie to her father. In the opinion it was stated that the decision there announced did not bar the mother from applying "for an order allowing her to see the children under such restrictions as the court may see fit to prescribe."

The testimony abundantly supported the conclusion of the court below that the mother was unfit to have the care and custody of a child of Marjorie's age; that she had been neglected while in the custody of her mother and had suffered from "a total lack of parental care and affection;" and that her "surroundings from the moral standpoint were most unwholesome." On the other hand, there was convincing evidence that the father "is a man of character, with home surroundings for the proper care, education and bringing-up of his children, with ample means to care for them, and in every way a proper parent to have the custody of his children." In fact, these conclusions are not questioned by counsel for the mother. Their sole contention is that the court below had no jurisdiction to enter a decree which has the effect of setting aside the terms of the contract of September 29, 1928, between the parents.

From what we have said it is apparent that the mother had adequate notice of the hearing and was afforded a sufficient opportunity to show, if she could,

that she was a fit parent to have the custody of her daughter.

It is true, as contended by counsel for the mother, that the present proceeding is neither habeas corpus nor, in form, a proceeding in equity. Habeas corpus would not lie at the instance of the father because he now has the custody. The court below rested its jurisdiction to some extent upon the second section of the Act of June 26, 1895, P. L. 316, which is unaffected by the amendment of May 13, 1925, P. L. 638. That section reads: "That in all cases of dispute between the father and mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child." This legislative enactment is merely declaratory of the common law. The relationship of parent and child is a status—not a property right. Parents, whether divorced or not, have no property right in their child's custody, concerning which they may make contracts such as the one here set up and relied upon in behalf of the mother as entitling her to the custody and payment of the specified monthly allowance. Even the decree of a court of a sister state, awarding the custody to the mother, may not be binding upon our courts: Com. ex rel. v. Daven et al., 298 Pa. 416. In the course of the opinion in the case of Petition of Frank B. Bort, 25 Kan. 308, 37 Am. Rep. 255, (cited with approval and referred to as a leading authority in Com. v. Daven, supra), Mr. Justice Brewer, then of the Supreme Court of Kansas, said: "Where the custody of children is the question, the best interest of the children is the paramount fact. Rights of father and mother sink

into insignificance before that. Even when father and mother are living together, a court has the power, if the best interests of the child require it, to take it away from both parents, and commit the custody to a third person. In other words, a court of chancery stands as a guardian of all children, and may interfere at any time, and in any way, to protect and advance their welfare and interests.''

Issues of the nature here involved are usually raised by habeas corpus proceedings but that remedy is not exclusive, ''the question......being a matter of inherent chancery jurisdiction which may also be invoked by petition or bill:'' 46 C. J., sec. 24, p. 1249. It is useless to argue about the rights of this mother or father under the contract; neither has any right thereunder which is involved in the issue here arising. The paramount issue—whether the jurisdiction of the court of the county in which the child happens to be at the time (Finlay v. Finlay, 148 Northeastern Repr. 624, and Com. v. Daven, supra) is invoked in habeas corpus proceedings, by petition, or by bill, or in any other way—is the best interest and permanent welfare of the child. The contract is not conclusive but must yield to this consideration: Com. ex rel. v. Manning, 89 Pa. Superior Ct. 301, 305. It would be a serious reflection upon our law if we were obliged to say, under all the circumstances here appearing, that the court below did not have jurisdiction upon this petition to inquire how this child's interests and permanent welfare would be best served and, in the exercise of a sound discretion, commit it to the care and custody of the person, whether parent or third party, best fitted in the opinion of the court to rear it and willing and able to assume that responsibility. The law is not so weak. We have no doubt about the jurisdiction of the court below to make an order and

are satisfied that the order entered was fully justified by the evidence. Both assignments are accordingly dismissed.

The order, in so far as it applies to Marjorie Rosenthal, is affirmed.