Com. ex rel. Mary R. Parker, Appellant, *v.* Irvin M. Parker.

Argued May 3, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNING-
HAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Ralph P. Tannehill,* and with him *McKenna & McKenna,* for appellant.

*Clarence B. Nixon,* and with him *Donald S. Thomas* of *Campbell, Wick, Houck, Thomas & Nixon,* for appellee.

OPINION BY CUNNINGHAM, J., July 14, 1932:

These habeas corpus proceedings, involving the custody of Mary Jean Parker, nine years of age, and her sister, Patricia Jean Parker, five, are the outgrowth of the unfortunate separation of their parents after ten years of married life.

The Parkers lived at Crafton, Allegheny County, and their life as husband and wife seems to have been normal until about four years ago when George I. Eagleson and his wife became their next door neighbors. Neighborly relations were established between the families and there is some indication in the testimony that a rather unusual intimacy developed between Mr. Eagleson and Mrs. Parker which resulted in the separation of both couples.

On June 11, 1931, Eagleson deserted his wife and on July 2, 1931, Mrs. Parker deserted her husband; he took with him a small grandniece of his wife (whom they were raising) and she took her two daughters; a few weeks later they were located in Pittsburgh, all living together in one house. Whether Mrs. Parker's relation to Eagleson at that time was that of housekeeper or paramour was one of the disputed questions. Eagleson and Mrs. Parker each instituted divorce proceedings against their respective spouses. The father of the Parker children subsequently obtained possession of Patricia and took her to the home of his parents.

At No. 4635, October Term 1931, of the court below the mother, Mary R. Parker, instituted habeas corpus

proceedings against the father, Irvin M. Parker, to regain the custody of Patricia, and at No. 4752 of the same term and year, the father secured a writ against the mother and Eagleson to obtain the custody of Mary Jean. The cases were heard together and resulted in separate orders awarding the custody of both girls to their father subject to the right of their mother to visit them as the court may later order; from these orders the mother and Eagleson have appealed to this court.

We adopt these excerpts from the opinion written for the court below by SWEARINGEN, J., "Irvin M. Parker and Mary R. Parker, his wife, were married June 28, 1921, and for a number of years they have resided in Crafton, Allegheny County, Pennsylvania. Two children were born to them—the elder, Mary Jean, now past nine years of age, and the younger, Patricia J. Parker, now past five years of age. On July 2, 1931, Mary R. Parker left the common home in Crafton, without any warning whatever to her husband, and went to the house of George I. Eagleson (the other respondent at No. 4752 October Term, 1931), taking the two little girls with her. Irvin M. Parker did not know where his family had gone, for he was at work and away from his home, when they left, but he later learned that they were at George I. Eagleson's house, on Delevan Street, Pittsburgh, Pennsylvania. On the evening of September 24, 1931, he found his younger daughter, Patricia J. Parker, near Delevan Street, Pittsburgh, and he took her with him to his father's home in Carnegie, Pennsylvania, where she still is. His elder daughter, Mary Jean, continues to reside with her mother, Mrs. Mary R. Parker, and George I. Eagleson, at Delevan Street, Pittsburgh, Pennsylvania.

"George I. Eagleson and his wife resided next door to the Parkers in Crafton, Pennsylvania. They had no children of their own but they adopted a little girl,

sometime prior to the separation of Mr. and Mrs. Parker. This child is residing at the home of George I. Eagleson on Delevan Street, Pittsburgh. On June 11, 1931, George I. Eagleson deserted his wife in Crafton, and went to the home of a Mr. and Mrs. Sauers, on the North Side, Pittsburgh, and later to his present home at Delevan Street ...... Mrs. Eagleson was called as a witness on behalf of Irvin M. Parker, and testified that Mary R. Parker and George I. Eagleson had become quite intimate while they were residing near each other in Crafton, Pennsylvania. . . . . . .

"Of course, the welfare, both present and permanent, of these little girls must control us in our disposition of these cases. These children ought not to be separated; they need each other. The younger little girl is now in the home of her paternal grandparents in Carnegie, Pennsylvania. According to the evidence, they are very respectable people. The grandfather is engaged in the stamp and ink business; and Irvin M. Parker has been employed by his father since prior to the former's marriage. Irvin M. Parker now receives a salary of $150 per month. Mary R. Parker testified that her husband gave all of his salary to the support of his family.

"In the Parker home at Carnegie, there are also two young women, sisters of Irvin M. Parker. They have lucrative employment at good wages and want the two little Parker girls to remain in their home.

"The elder little girl is now in the home maintained by George I. Eagleson, at No. 915 Delevan Street, Pittsburgh, Pennsylvania. Her only playmate is the adopted child of Mr. and Mrs. Eagleson. She has no blood relation in that home except her mother, under the circumstances heretofore stated.

"Both Mr. Eagleson and Mrs. Parker testified that he agreed to pay her $15 per week for taking care

of his adopted child. There was no evidence of what Eagleson's capacity to pay is, and nothing whatever as to how long this alleged arrangement was to last. So far as the testimony goes, the contract could be broken by either party at any time.''

Mrs. Parker attempted to justify her withdrawal with her children from the common home by asserting that her husband had been indifferent to his children and had subjected her to indignities, including degenerate practices. There was no corroboration of her testimony and her charges were positively denied by her husband. In the opinion below, her accusations were carefully considered and the testimony on both sides fully analyzed; it is sufficient to say that, upon a careful review of all the evidence, we are in accord with the conclusion reached, viz; that ''Mrs. Parker has failed to prove the truth of the charges.''

It is expecting too much of any court to ask it to believe, in the light of all the testimony, that the present relations between Eagleson and Mrs. Parker are as innocent as they assert. The court below expressed its finding in this language: ''We find that the place where Mary Jean Parker is now residing is not a fit place for her to be; and we regret to find that Mary Regina Parker, her mother, is not a fit person to have the care and custody of her daughter, Mary Jean.''

From our independent consideration of the record we have reached the same conclusion. The principles of law applicable to this case were fully stated in Custody of Minor Children of Dunbar A. Rosenthal, 103 Pa. Superior Ct. 27, and need not be repeated. There is no merit in either appeal.

The orders are severally affirmed at the costs of appellants.