### Com. ex rel. Parker v. Parker, Appellant.

Argued May 9, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Emanuel Goldberg* and with him *L. D. Schmidt,* for appellant.

No appearance and no printed brief for appellee.

OPINION BY CUNNINGHAM, J., October 2, 1933:

This is the second habeas corpus proceeding relating to the custody of Mary Jean Parker, ten years of age, and her sister Patricia Jane Parker, aged six, children of Irvin M. Parker and Mary R. Parker.

When the matter of their custody was before us last year we affirmed, in an opinion filed July 14, 1932, (106 Pa. Superior Ct. 18, 161 A. 562) orders of the court below placing them in the custody of their father, but providing that their mother "be allowed to visit [them] on proper occasions, to be determined later."

For some reason, not apparent upon the record, no application was made to the court below for a determination of the conditions under, and the occasions upon, which the mother might exercise the right granted her in the orders. Efforts seem to have been made by counsel for the parties to arrange for such visits, but the results were not satisfactory.

On December 19, 1932, Mary R. Parker, alleging that she had obtained a divorce from her husband, that he "is an unfit person to have the custody of the children," and that "he has refused to permit [her] to see them at proper times," instituted the present proceedings to obtain their custody.

The reasons for awarding the custody of these unfortunate and innocent victims of the marital discord of their parents to their father rather than their mother are stated at length in our former opinion and need not be repeated.

There was evidence at the hearing upon the present petition that both Irvin M. Parker and his father (with whom he and the children live at Carnegie) are, in the language of the court below, "bitterly hostile" to the relator, and are not willing that she should visit her children except at their home and at their pleasure.

Upon consideration of the evidence, the court below did not change the permanent custody of the children, but, citing Commonwealth v. Strickland, 27 Pa. Superior Ct. 309, and Commonwealth v. Tweedy, 74 Pa. Superior Ct. 577, 581, made an order fixing a place (the home of Miss Chessman in Crafton) and specifying times for visits with them by the relator. This appeal is by the father from that order and the only question for us is whether, under the circumstances existing when it was entered on January 5, 1933, the member of the court below who heard the testimony and made the order, Elder W. Marshall, J., abused the discretion vested in him.

It was noted in our former opinion that when the order we there affirmed was made the parents of the children had separated, that another couple, George I. Eagleson and his wife, had also separated, and that Mrs. Parker and Eagleson were occupying a house on Delevan Street, Pittsburgh, and had taken with them the Parker children and a grandniece of Mrs. Eagleson about four years of age; we also stated therein that divorce proceedings were pending between both couples.

At the last hearing it was shown that cross-libels were filed by the Parkers, in which she charged him with cruel and barbarous treatment and indignities

and he charged her with adultery. The cases were heard together by MACFARLANE, P. J., who entered a decree on December 2, 1932, in favor of Mrs. Parker, upon the merits of her libel, and dismissed her husband's libel, not upon the merits (which were not adjudicated) but upon the ground that any adultery which she may have committed was subsequent to the separation and, therefore, not a bar to Mrs. Parker's action. It was also shown that the Eaglesons were divorced on May 25, 1932. Mrs. Parker and Eagleson lived at the Delevan Street address from July, 1931, until June, 1932, when they removed, with the little grandniece, to Cambridge, Ohio, to live with Eagleson's brother.

Mrs. Parker's testimony relative to the circumstances under which she is now living reads: "Q. Where is he [Eagleson] now? A. In Cambridge, Ohio. Q. With whom does he live there? A. With his brother, John P. Eagleson. ...... Q. How long have you been down at Cambridge, Ohio? A. Since June. Q. What is J. P. Eagleson's business? A. Wholesale barber and beauty supplies. Q. And under what circumstances have you been living at the home of J. P. Eagleson since June last? A. I am still taking care of the little girl that George Eagleson is raising and taking care of Mr. Eagleson's house and taking care of the store. Q. They have a store in Cambridge? A. Yes. Q. Where does your brother, John F. Cummings, live? A. In Crafton."

The relator's brother, an employe of the Post Office Department, has lived for some time at the eminently respectable home in Crafton of Miss Chessman, a lady past middle life, and the presiding judge selected her home as a proper place at which the relator could visit with her children.

The order follows: "And now, January 5, 1933, after hearing on petition last filed in above case, it is ordered and decreed that Mary R. Parker be permitted

to have the minor children, Mary Jean Parker and Patricia Jane Parker, with her at the home of Miss Chessman, 206 Noble Avenue, Crafton, Allegheny County, Pennsylvania, from Saturday at ten o'clock, A. M., to Sunday at six o'clock, P. M., of each week that Mary R. Parker is within Allegheny County; said Mary R. Parker to advise Irvin M. Parker no later than Friday of the week in which she desires to have the children with her; after being so notified, Irvin M. Parker shall deliver said children to the home of Miss Chessman on the following Saturday no later than ten o'clock, A. M., and shall call for them to return with them to his own home no later than six o'clock, P. M., of the following day, Sunday; he shall also be permitted to call for them on Sunday morning between nine and nine-thirty and take them to Sunday-school in Carnegie, Pennsylvania, returning them to the home of Miss Chessman on or before twelve forty-five o'clock, P. M. It is further ordered that Mrs. Mary R. Parker shall be entitled to have the children with her during part of the summer vacation, the particular period to be specified hereafter.''

In the opinion, supporting the order, the evidence was reviewed and the conclusion stated that it would be ''best for all concerned that the reunions of mother and daughters be held at some suitable place, near to, but outside of the Parker home.'' It was noted that ''there was no denial of the fact that the home of Miss Chessman, at Crafton, some two or three miles distant, was such a place;'' and it was explained that the provision for notice was inserted because ''it was not contemplated that Mrs. Parker would journey from Ohio weekly.''

The opinion concludes: ''Experience has proven that where husband and wife are estranged and antagonistic, visits by one to the home of the other almost invariably result in further trouble. This respondent

and his family are especially intolerant and uncharitable toward relator, and under all of the circumstances we concluded that the best interests of the children required that they have free intimacy with their mother on the occasion of her visits. Our judgment was, and is, that any visit by relator to respondent's home would have been absolutely futile, so far as bringing happiness to either the children or their mother was concerned."

Upon consideration of the entire record, our independent conclusion is that the relator is still unfit to have the permanent custody of her daughters, but it does not follow that she is not entitled to visit them at a proper place and under the conditions prescribed, in the order. The effect of the order appealed from is, substantially, the "determination," contemplated by the original order, of the "occasions" upon which the relator may properly be allowed to visit her children. We are not convinced that the court below has abused its discretion in any way and, therefore, overrule the assignments of error.

Order affirmed at costs of appellant.