## Commonwealth ex rel. Martocello, Appellant, *v.* Martocello.

Argued March 9, 1942.

Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*John Patrick Walsh,* for appellant.

*William A. Gray,* for appellee.

OPINION BY HIRT, J., April 22, 1942:

This appeal has to do with the custody and proper placement of an eleven year old boy. There were dissensions between the parents throughout their married life beginning in 1929 which finally resulted in their separation in September 1940. The boy remained with the mother after the separation but there was no bond of affection and sympathy between them. He became defiant in his attitude toward her and so unmanageable that she found it necessary to call in a private detective who took the child in custody and turned him over to the police at a station house. The boy was then brought into juvenile court as a delinquent, in reality on a charge of incorrigibility. When the matter came on for hearing, at the suggestion of the mother agreed to by the father, the boy was placed in Haverford School and remained there throughout the following school year, after which, he spent the summer vacation with his father. On August 13, 1940, the mother petitioned for the custody of the child. The lower court, after full hearing, awarded custody to the father but directed that the child be placed in Waldron Academy for the ensuing school year with the right in both parents "to see the child at the Academy, ...... under the proper regulations of the Master of the Waldron Academy, until further order of the court."

The main contention of relator in objecting to the order is that the father is an unfit person because in September 1940 he was convicted of adultery in the quarter sessions of Philadelphia. His interest in another woman was one of the causes of the separation and the jury upon circumstantial evidence found him guilty of adultery with her. The prosecution was inspired by the wife and the evidence against him was developed by a private detective employed by her.

In cases of this kind, what is in the best interest of the child and his permanent welfare is to be decided, not in relation to a fixed standard, but by determining

what is best for the child under all of the circumstances. It is generally recognized as fundamental, that it is unwise to sever family ties completely. *Com. ex rel. Manning v. Manning*, 89 Pa. Superior Ct. 301; *Com. ex rel. Bloomfield v. Faxstein*, 84 Pa. Superior Ct. 243. A child needs to feel that he belongs to some one in a family relationship. The problem of proper placement is not easy of solution where, as here, the parents have separated and there is a deep seated enmity between them. It then often becomes a question of preferring one over the other after an appraisal of the past success of each as a parent. Aside from the father's dereliction, he had been all that a parent should be; he has provided well for his son and the boy is fond of him. On the other hand, unfortunately, the boy has little affection for his mother. When he was with her she punished him frequently, often by whipping him. On her admission she could not manage him, though in his association with his father there has been no behavior problem.

Where the dispute is between the father and mother, in determining which of them shall have custody of the child, regard must be had "to the fitness of such parent as well as the best interest of the child." Act of June 26, 1895, P. L. 316, §2, 48 PS 92. If this father had been living in open adultery we would agree that he should not be awarded custody. Cf. *Com. ex rel. Parker v. Parker*, 106 Pa. Superior Ct. 18, 161 A. 562. But the conviction of adultery, of itself under the circumstances, does not necessarily disqualify him. Lapse from moral standards has been held not controlling in determining the question of custody where the parent is not otherwise at fault, especially as a temporary measure. *Com. v. Addicks*, 5 Binn. 519.[1] In the pres-

---

[1] In referring to the Addicks case and in commenting on the conduct of the wife, BROWN, P. J., said: "Similarly, here, while we disapprove of the respondent's misconduct, we can find no

ent case the father is a devoted parent; we agree with the lower court that his affection and solicitude for the child outweigh other unfavorable considerations. In this connection it may be noted that it was the mother who was responsible for the public record of the father's delinquency; in inspiring the prosecution she did not have the welfare of her son at heart. While the child is at Waldron Academy the father's custody is nominal; the child is in his home only during the recesses of the school.

We think that the order was the best possible solution of the question under the circumstances. The order was made to meet the situation as it existed at the time of the hearing; it is not irrevocable and may be modified from time to time with changing circumstances. Undoubtedly the lower court will consider the advisability of giving the mother the opportunity of reestablishing herself in the affection of her son during vacation periods. The unnatural relationship can be corrected by a change of attitude in both parents. The way to the child's confidence is not by harassing the father for his shortcomings, whether or not deserved. In accomplishing this desirable result full cooperation will be expected from the father; the child should not be a party to the dissensions between the parents.

Order affirmed.

---

fault with his treatment of the child. We regret we cannot say as much for the petitioner. Indeed, she admitted on cross-examination of beating the boy with a strap ...... When the boy was questioned by the court, in private chambers, of how his mother treated him, the boy answered quite frankly: 'Well, sort of rough ...... She was pretty mean to me and I would always get a licking every night. She used to kick me sometimes ...... She kicked me in the mouth' ......"