## Commonwealth ex rel. Pukas, Appellant, *v.* Pukas et al.

Argued September 29, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*F. H. Starling,* for appellant.

*C. Laurence Cushmore, Jr.,* with him *White, Williams & Scott,* for appellees.

OPINION BY RENO, J., May 25, 1949:

In a habeas corpus proceeding the court below awarded custody of the minor child to the father and his mother. The relator, the mother of the child, has appealed.

The parents were married in 1941, and their child, Laura, was born in 1942. On January 15, 1946, upon the husband's petition, they were divorced by a Nevada court, and it awarded custody of the child to the father.[1] On January 30, 1946, she petitioned the court below for a habeas corpus. At the hearing on February 13, 1946 she agreed that the child should remain in the custody of the father and that since he was about to return to his post in the Army the paternal grandmother, living in Philadelphia, should have actual custody.[2]

Two weeks later, after the father had returned to the Army, she filed another petition. The case came on

---

[1] The jurisdiction of the court below was not challenged on the ground that the award of the Nevada court was res judicata or that the Full Faith and Credit Clause precluded a habeas corpus proceeding in the Pennsylvania courts.

[2] The agreement did not bar relator's right to a subsequent habeas corpus. *In re Custody of Minor Children of Rosenthal,* 103 Pa. Superior Ct. 27, 157 A. 342.

for a hearing on March 27, 1946, and while the hearing judge was holding it under advisement, she seized the child in Philadelphia and carried it to her home in West Virginia. The grandmother instituted custody proceedings in that State, and on March 4, 1947, the Supreme Court of West Virginia, (two judges dissenting), basing its decision largely upon the Full Faith and Credit Clause, awarded custody to the grandmother. *Pukas v. Pukas*, 42 S. E. 2d 11. Pursuant to its decree the child was returned to the grandmother. On July 7, 1947, she again seized the child and took it to West Virginia, but upon advice of counsel returned it to the paternal grandmother about three months later.

The court held a hearing on the second habeas corpus on November 26, 1947,[3] and after taking the testimony of witnesses on both sides, by an order dated December 19, 1947, dismissed the petition, and again awarded the child to the father in care of paternal grandmother. On February 17, 1948, she petitioned for a rehearing, and a further hearing was granted and held on February 26, 1948. At that hearing the grandmother was not present, and had not been served with notice of it. Apparently she had been away from her home for several days before the process-server arrived there, and her whereabouts were unknown. At the argument before us her counsel reported that she had taken the child to Germany and there joined her son in the Army of Occupation. Although we have had the appeal under

---

[3] At the beginning of the hearing, the hearing judge stated to relator's counsel: "You may offer any evidence you please that is proper and legal." But in answer to the request of appellee's counsel that the evidence "be limited to a change of circumstances since the last order of the Court," the judge said: "I will do that." Taking the testimony as a whole it indicates that the hearing judge was of opinion that there had been such a substantial change of circumstances as to warrant a rehearing. Cf. *Com. ex rel. v. Gozzi*, 163 Pa. Superior Ct. 527, 63 A. 2d 121.

advisement for a considerable period we have had no advice that child, father or grandmother has returned to the jurisdiction of this Court. However, since the child was taken away pending disposition of the case, our power to enter an order cannot be questioned, even though it cannot be immediately enforced.

Our reading of the testimony has not confirmed the conclusion of the learned hearing judge. The case involves a child of tender years, and unless compelling reasons to the contrary appear it should be committed to the care and custody of its mother by whom its needs will ordinarily be best served. *Com. ex rel. v. Batyko*, 157 Pa. Superior Ct. 389, 43 A. 2d 364. This rule applies even where the father is able to supply superior physical surroundings and advantages to the child. *Com. ex rel. v. Levinson*, 162 Pa. Superior Ct. 563, 59 A. 2d 625. And where, as here, the contest is really between the mother and the grandmother, who has been given actual custody of the child, the scales weigh heavily in favor of the mother.

Relator is a woman of unblemished reputation. She is a practical nurse, and her income will provide adequate support for herself and the child. She proposes to maintain the child in her parents' home who live on a farm in West Virginia, a few miles from the relator's place of employment. It is a nine-acre farm; the house provides ample and comfortable room for the child; and a school bus passes the house to carry children to a school two miles away. Against her is the record of two "kidnappings" of the child, *Com. ex rel. v. Daven*, 298 Pa. 416, 148 A. 524, but this can be explained and palliated as a compelling emotional pressure of a mother's love and yearning for her child. Even if it were viewed as a serious past dereliction it would not stand as an insuperable obstacle to her claim to the custody of a child of tender years. *Com. v. Addicks*, 5 Binney 519; *Com. ex rel. v. Bock*, 159 Pa. Superior Ct.

159, 48 A. 2d 133; *Com. ex rel. v. Barber*, 161 Pa. Superior Ct. 82, 54 A. 2d 47.

We shall not review the testimony concerning the grandmother's fitness. It is enough to say that parts of it, especially that introduced at the last hearing when she was not present, raise serious doubts as to her capacity and the environment she supplied for the child. The hearing judge was, we think, unduly impressed by the fact that the child's physical condition improved after she was brought from West Virginia to Philadelphia. Lack of outdoor exercise in Philadelphia which the child enjoyed in the country would account for the increase in weight, and the skin disease was a mere rash.

It must be recognized too that the grandmother by taking the girl to Germany has produced a substantial change of circumstances. The order of the court did not forbid removal of the child, but the opinion of the learned judge demonstrates that custody was awarded to the father in care of the grandmother upon the assumption that the girl would be maintained in the grandmother's Philadelphia home. Residence with the father was not contemplated. Taking a child of tender years, in the most impressionable period of her life, to Germany in days like these was an improvident act, and it does not demonstrate custodial fitness on the part of the grandmother.

Our conclusion is that the mother should have custody of the child. We recognize the difficulties which lie in the way of enforcing our order. We shall rely upon the efficient staff of the Municipal Court to discover ways and means of securing compliance. Possibly an appeal to Army authorities will secure adequate cooperation, and the return of the child to Philadelphia.

The order is reversed, and the record is remitted to the court below with directions to enter an order consistent with this opinion, and secure proper compliance with it.