## Commonwealth ex rel. v. Ribikauskas

*Morris Passon*, for relator.

*H. Mark Solomon*, for respondent.

WINNET, J., May 13, 1949.—The question involved in these proceedings is the duty of an ex-soldier living in Philadelphia to support his two children living in England. The facts are not in dispute. Relatrix, Sylvia Ribikauskas, is a war bride who lived in England where she bore respondent a child on September 21, 1944. She came to this country and married re-

spondent in 1947 and lived here with him approximately one year. In June 1948 respondent divorced relatrix who sometime before the proceedings had left this country. Another child from this marriage was born March 27, 1948, in England.

The petition seeks support for the two children. It is resisted on many grounds: (1) That the basis of the obligation to support is to prevent children from becoming charges on society; and since they reside in England there is no possibility of them becoming a charge on our society; (2) that the children are aliens and not entitled to the benefit of our support laws; (3) that relatrix deserted respondent and agreed that if he paid her passage back to England she would make no claim for support for the children, and (4) the obligation to support carries with it the right to control or share in their welfare; since there is impossibility of seeing the children, sharing their custody, or subjecting them to the control of the court, there should be no support.

1. The obligation to support children does not rest on the theory of preventing them from becoming a charge on society. It is a fundamental obligation arising out of the relationship of marriage.

"The duty of parents to provide for the maintenance of their children is a principle of natural law; an obligation . . . laid on them, not only by nature herself, but by their own proper act, in bringing them into the world: . . . By begetting them, therefore, they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved. And thus the children will have the perfect right of receiving maintenance from their parents. . . . The establishment of marriage in all civilized states is built on this natural obligation of the father to pro-

vide for his children": 1 Blackstone Commentaries, Lewis ed., p. 446.

Commonwealth ex rel. v. Firestone, 158 Pa. Superior Ct. 579, contains two statements which are complete answers to the contention made on behalf of respondent that there must be danger of becoming charges on society before there is a duty to support. Judge Arnold says that a duty to support "is well nigh absolute" and adds (p. 581):

"A father of sufficient means must support his child, and it is not a defense that either the mother-custodian, or the child itself, has independent means. The support is to be commensurate with the means and station in life of the father."

2. Even if we concede, for the sake of argument, that the two children are aliens, it would not defeat the jurisdiction of the court. Under section 733 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4733, the only jurisdictional requirement is that the father be within the limits of the Commonwealth. In Commonwealth ex rel v. Bucciarelli, 162 Pa. Superior Ct. 582, 584, the court states:

"Section 733 of the Act of June 24, 1939, is in substance a reënactment of the Act of April 13, 1867, P. L. 78, section 1 et seq., as amended, 18 P. S. 1251 et seq., Com. v. Shankel, 144 Pa. Superior Ct. 476, 19 A. 2d 493. 'The Act of 1867 says nothing about the residence or domicile of the delinquent husband; its only requirement is that he be within the Commonwealth. This means just what it says—his physical presence within the State. If he can be reached by a warrant, it is sufficient to give our courts jurisdiction and compel him to support his wife and children, without regard to his residence or settlement and without reference to where the original desertion or neglect to maintain his family took place': Com. v. Shetzline, 84 Pa. Superior Ct. 100, 102. . . . In the

instant case, the defendant was within the limits of this Commonwealth and it is of no consequence that the mother and the child now live in Oklahoma." The duty to support is nonetheless because the children live in England rather than in Oklahoma.

The Nationality Act of 1940, 54 Stat. at L. 1137, as amended, section 201, subsecs. (*g*) and (*i*), 8 U. S. C. §601, provides that a person born outside the United States of parents, one of whom is a citizen, and the other an alien, is a citizen at birth. It provides further that in order to retain such citizenship the child must have a stated period of residency in the United States before he reaches the age of 21 years. In re Bolter, 66 F. Supp. 566, it is held that children who must fulfill a condition to retain their citizenship are not deprived for the time being of the rights of citizenship. The court holds:

"The citizenship of a person who becomes a citizen at birth must be deemed to continue unless he has been deprived of his citizenship through the operation of a treaty or congressional enactment or by his voluntary action in conformity with applicable legal principles." (Syllabus.)

3. Parents by their agreement cannot deprive children of their right to support. See Commonwealth ex rel. v. Teitelbaum, 160 Pa. Superior Ct. 286, 289. The separation or divorce of the father from his wife has no effect upon the obligation to provide reasonable maintenance of the child of the union and he has a duty to continue independently of the continuity of the marital status: Commonwealth v. Elliott, 157 Pa. Superior Ct. 619.

In Commonwealth ex rel. v. Bernstein, 149 Pa. Superior Ct. 29, the court swept aside an agreement for custody of a child. Judge Cunningham's words from In re Rosenthal, 103 Pa. Superior Ct. 27, is quoted (p. 32):

" 'It is useless to argue about the rights of this mother and father under the contract; neither has any right thereunder which is involved in the issue here arising. The paramount issue . . . is the best interest and permanent welfare of the child.' " These words are equally applicable when parents by contract attempt to curtail the "nigh absolute" duty of support.

4. The contention of respondent that he is being asked to support the children without a right to share their custody or even to see them, has been answered legally, but is, nevertheless, disturbing socially. The obligation to support is independent of any right to share custody. In Commonwealth v. Bucciarelli, supra, the children lived in Oklahoma, and the court, nevertheless, affirmed the order to support. The question was raised in Commonwealth ex rel. v. Firestone, supra. The court held that the fact that the mother of the child improperly deprived the father of his right of visitation, determined by the order of court, does not relieve the father of the duty to support the child. The court is bound, however, to be troubled by the demand of a father to share a child whom he is asked to support. Too frequently fathers stop payment of support orders when they are deprived of visitation. We find it expedient in cases to warn mothers that they must coöperate and allow visitation if they expect the father of the child to support it. This it seems to us is better technique than to threaten the mother with contempt proceedings if she fails to allow visitation in accordance with the court's order. However, this argument is being advanced by respondent not out of any affection or love for the children. He himself consented to the children being taken to England on an agreement with the mother that he would not be required to support them. He is,

therefore, responsible for their inaccessibility at the present time.

The obligation to support being absolute we direct that the respondent pay the sum of $8 per week for the support of his two children. At the present rate this is approximately one pound sterling for each of the children, which, considering the wages of respondent, and all circumstances, seems to be fair and reasonable.