Commonwealth ex rel. Pressens, Appellant, *v.* Siegler et ux.

Argued October 3, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

Daniel Marcu, for appellant.

Philip Richman, with him Richman & Richman, for appellees.

OPINION BY DITHRICH, J., November 14, 1950:

In this habeas corpus proceeding relatrix, the mother of a baby boy born out of wedlock December 3, 1949, seeks to have his custody restored to her. The learned judge of the court below dismissed her petition and left the child in the custody of respondents. He was placed in their custody without the knowledge or consent of his mother when he was only eight days old. One Jacob Gordon, a married man having a wife and children, admittedly is the father of the child.

According to the testimony of the mother, and it is not contradicted by the father, he repeatedly told her before the birth of the child that she would have to place it somewhere for adoption, so as not to bring disgrace upon him and his family. After the birth of the child in Doctors Hospital, Philadelphia, he did not call at the hospital to see his offspring or relatrix but telephoned her, repeating his demands that the child be placed somewhere for adoption, even insisting upon an orphanage across the street from the hospital.

She had also been told by her parents that she could not bring her baby to their home in a small community in New Jersey because of the shame it would bring upon them. "Bewildered" by the attitude of her parents and "tormented" by the persistent demands of the father of her child, she finally, on the day before she was discharged from the hospital, executed a paper captioned "Affidavit of Surrender and Consent." It recited in part: "Your affiant further avers that she is of the Protestant faith and makes this affidavit . . . for the purpose of placing said minor with persons of the Jewish faith for the purpose of adoption . . ." The "Affidavit" was prepared by an attorney for the father. He subsequently became attorney for the respondents. He testified that "Mrs. Doline [who later turned out to be an aunt of Harold B. Siegler, the husband-respondent] was . . . to act as intermediary in the transfer of the child."

The following day the child was turned over to Mrs. Doline, after relatrix had been discharged from the hospital. She then went to her parents' home in Moorestown, New Jersey. As soon as she was able to be up and around, she started looking for her baby and, upon contacting the attorney who had prepared the paper she signed in the hospital, she was told by him that he did not know "where the people who had the child were," although he had represented them from the time it was arranged to have the child ultimately placed with them for the purpose of adoption.

On February 1, 1950, relatrix commenced a habeas corpus proceeding, naming Mrs. Doline as defendant. When the case first came on for hearing Mrs. Doline appeared, represented by counsel who now represents the Sieglers. She did not produce the child and, on advice of counsel, refused to say to whom she had given the child. Mrs. Siegler admitted that she knew that Mrs. Doline had refused to tell where the child was, and that

she knew that the mother was searching for it. It was not until April 17, 1950, when ordered to do so by the court, that Mrs. Doline disclosed who had the child. This present proceeding was then immediately instituted. At the hearing counsel for respondents admitted that "we . . . avoided giving him [attorney for relatrix] information as to the whereabouts of the child for obvious reasons which I would rather not go into openly at this point."

We have recounted in some detail the steps taken by relatrix to repossess her child, for in our opinion they clearly demonstrate that there was no act or even thought of abandonment on her part and that she acted with due diligence. She appears to be truly repentant of her action in turning the child over to Mrs. Doline for the purpose of adoption upon the insistence of Jacob Gordon, the father. In the meantime she has found a suitable home for the child and herself with her sister, who will look after him from 7:00 a.m. to 3:30 p.m. while the mother is at work. The sister has three children of her own, but they are all of school age and their demands upon her time will not interfere with her care of the baby.

Upon such independent examination of the record in this case as we are required to make by the Act of July 11, 1917, P. L. 817, §1, 12 PS §1874, we can reach no other conclusion than that the learned judge of the court below erred in concluding "that the petitioner, unlike the respondents, is not a fit person to have the custody of this child," and that she "does not indicate that she has a proper and good home to which to take the child." The learned court stresses the "sinful" birth of the child, as if that were a valid reason for keeping it from her, "and other inferences that can be drawn from the evidence . . . [leaving] much to be desired as to her morality." We have searched the record in vain for evidence to substantiate that state-

ment; and even if there were such evidence, it would not be controlling in determining the question of custody where the mother is not otherwise at fault. Aside from the meretricious relationship that existed between the parents of this child, we find no other evidence of immorality on the part of relatrix. During her intimacy with Gordon she was separated from her husband from whom she obtained a divorce more than a year before the child David was born, and she submitted to Gordon because he told her that he would obtain a divorce and marry her.

In *Commonwealth ex rel. Williams v. Price,* 167 Pa. Superior Ct. 57, 74 A. 2d 668, we said, speaking through RENO, J., at pages 59, 60: "As a general rule the mother has a prima facie right to the custody, care and companionship of a child of tender years. [The child in the instant case is not yet a year old.] Com. ex rel. Shelton v. Bush, 152 Pa. Superior Ct. 580, 33 A. 2d 57; Com. ex rel. Levinson v. Levinson, 162 Pa. Superior Ct. 563, 59 A. 2d 625. *This is so even though the child is born out of lawful wedlock.* Com. ex rel. Human v. Hyman, 164 Pa. Superior Ct. 64, 63 A. 2d 447; Com. ex rel. Minnick v. Wilson, supra [159 Pa. Superior Ct. 230, 48 A. 2d 27]." (Italics supplied.)

And in *Commonwealth ex rel. Kevitch v. McCue,* 165 Pa. Superior Ct. 49, 67 A. 2d 582, where the father sought the custody of twin children of himself and respondent then about two and one-half years old, we reversed the order of the lower court awarding their custody to the father and applied the general rule that the right of a mother to the custody of an illegitimate child is superior to that of all other persons, including the father, for ordinarily the best interests of the child can be served by maternal care. We said, speaking through HIRT, J., at pages 51, 52: "Respondent admittedly has had a sordid past. . . . she had been a prostitute for a time, and also had been addicted to a narcotic drug.

On both counts she had come in conflict with the law. But except in her alliance with relator which she latterly justified on an expectation of marriage she has effected a complete reformation." See also *Commonwealth ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 562, 25 A. 2d 855; *Commonwealth ex rel. Bock v. Bock,* 159 Pa. Superior Ct. 159, 48 A. 2d 133.

In reading the opinion of the court below we were surprised to find that: "The petitioner does not indicate that she has a proper and good home to which to take the child." The court had stated earlier in its opinion: "We can assume that both homes are good." We do not have to rely on an assumption that the home to which relatrix intends to take the child is a proper and good home, for there is sufficient evidence on which to determine that question. Nor do we agree with the learned court below "that all the material advantages are in favor of the respondents"; and even if they were, the "material" advantages are subordinate to the physical, intellectual, moral and spiritual well-being of the child. In our opinion the welfare of the child, which is the paramount consideration, will best be served by awarding its custody to its mother.

The order is reversed and the custody of the child is awarded to relatrix.