DENVER C. MOORE, Plaintiff, v. DELLA MAE MOORE, Defendant.

(*April* 4, 1959.)

STOREY, J., sitting.

*Daniel J. Layton, Sr.*, for Petitioner.

*Arthur Dean Betts* for Defendant.

Superior Court for Sussex County, No. 182, Civil Action, 1958.

STOREY, J.:

Under date of December 2, 1958, decree in divorce on ground of adultery granted after hearing on petition.

Subsequently, hearings were held on petitioner's prayer for custody of his two minor children, Delores Moore and Denver C. Moore, Jr.

The testimony presented was ample to sustain the charge of adultery on the part of the mother of the children, Della Mae Moore.

If the father of the children were mentally, physically and financially able to properly look after them, the solution to the problem of custody would not be too difficult. However, unfortunately, such is not the case.

One paramour was involved. There was no evidence of promiscuity as that term is generally understood in such matters, nor was there any evidence that any of the mother's acts of indiscretion were performed in the presence of the children.

From appearances, the children are healthy and happy, are kept clean and are dressed neatly and properly by the mother.

By pointing up these facts, I do not in any manner attempt to condone or minimize the conduct of the mother of the children, but do so only to aid in a portrayal of the mother's situation as it actually exists, and which I must take into consideration in reaching a decision in the matter.

The father of the children, unhappily, is mentally, physically and financially unable to look after and properly care for them. As an alternative, he offers his father, Howard Moore, and his mother, Elva Mae Moore. The father of the children is financially dependent upon his parents, Howard and Elva Mae Moore. Mrs. Moore, the paternal grandmother, was at one time a patient at the Delaware State Hospital, and at the hearing, gave every evidence of being a highly nervous individual. Both Mr. and Mrs. Howard Moore testified that if Mrs. Moore were to suffer a recurrence of her nervous trouble, they would not be able to keep and look after the children of their son. In such case, it was never made clear just what would happen to the children.

The above facts point up the father's situation which I must also take into consideration in reaching a solution to the problem in this proceeding.

It is the contention of the petitioner and the father of the children that the mother of the children is morally unfit to retain the custody of their minor children.

On the other hand, the mother of the minor children contends that the father is mentally, physically and financially unable to properly care for their minor children, and that, therefore, she should be permitted to retain custody.

﹐ In effect, the Court in this case is asked by the father of the children, who admittedly is unable in any respect to properly look after and care for them, to turn over the custody of the children to his father and his mother, the paternal grandparents of the children, his mother having been a patient at the Delaware State Hospital, who now gives every indication of being in a highly nervous state, and who testified very frankly, as did her husband, Howard Moore, that if she became ill again, someone else would have to look after the children, without any suggestion whatsoever as to whom, if anyone, they had in mind to take on such a responsibility.

In each such case as is here presented for determination by the Court, the paramount and controlling consideration with which the Court is concerned is the present and future welfare of the children. *Ex parte Marti*, 7 *Terry* 313, 83 *A.* 2d 688.

"Even where the father is given by statute the paramount right to the custody of his child, this right must yield to whatever is found to be for the best interests of the child.[5] The courts will not go so far, in enforcing the father's preferential right of custody, as to award such custody to his relatives in preference to the mother, where he is unfit to be custodian of the child,[6] although such an award may possibly be justified where the child's health and physical condition are such that its custody ought not to be given to the mother."' 39 *Am. Jur.*, Sec. 20, Page 609.

"Naturally, no hard and fast rule can be laid down as to what is in the best interests of a child, but each case must be determined upon its own peculiar facts and circumstances.[15] The court is in no case bound to deliver a child into the custody

of any particular claimant.[16] What will be for the best welfare of the child is a matter for the sound exercise of the discretion of the trial court.[17] The present happiness and welfare of the child at the time the case comes on for hearing, not past history of the case, is the controlling consideration.[18]" 39 *Am. Jur.*, Sec. 20, Page 609.

Della Mae Moore, the mother, and the two children are living in the Selbyville area, and are sharing a seven room house with a maternal uncle, Harley Littleton, and Mrs. Veronia Mahoney, widow, age fifty, and long time friend of the family. Delores is in school in Selbyville and adjusting satisfactorily. The four year old son remains at home. There is no present indication that the mother, Della Mae Moore, either sees the paramour at her home or keeps company with him. The maternal uncle is employed at a filling station at Bishop, Maryland, and Della Mae Moore either is or expects to be re-employed at the shirt factory in Selbyville. Although the mother needs it, she expects no support from the father of the children.

"In cases of this kind, what is in the best interest of the child and his permanent welfare is to be decided, not in relation to a fixed standard, but by determining what is best for the child under all of the circumstances. It is generally recognized as fundamental, that it is unwise to sever family ties completely." *Commonwealth ex rel. Martocello v. Martocello,* 1942, 148 *Pa. Super.* 562, 25 *A.* 2d 855, 856.

"A child needs to feel that he belongs to some one in a family relationship." *Commonwealth ex rel. Martocello v. Martocello, supra.*

The problem of placement is not easy of solution where the family is broken by separation and divorce, especially where a certain amount of bitterness exists. In addition, the condition of the paternal grandmother's health, primarily her nervous condition, must also be seriously taken into account. As stated above, both the paternal grandmother and the paternal grand-

father testified that if the paternal grandmother should again suffer from her nervous condition such as to require nursing or institutional care, that they would not be able to keep the children.

█ The facts of this case require and make it necessary to consider whether the conduct of the mother of these children "ipso facto, precludes awarding her the custody of the children. This depends, of course, upon the effect her conduct has had or might have on the children. There is no evidence that the indiscretions were notorious or that they occurred in the presence of the children. Adultery alone is not a bar." *"People ex rel. Geismar v. Geismar, Sup.,* 54 *N. Y. S.* 2d 747, 755.

In *People ex rel. Geismar v. Geismar, supra,* the Court further said:

"Above all, the question here, as already observed, is not one of abstract morals, but rather whether the mother's indiscretions have been such as to affect her right to custody; whether the welfare of the children has been or will be harmed thereby. The law is not so vengeful as to punish the children through their mother."

█ In view of all of the facts and circumstances of this case, I am persuaded that the best interest of the children will be served by permitting these children to remain in the custody of their mother. My conclusion, therefore, is that the children will be awarded to their mother, Della Mae Moore, upon the following conditions:

1. That the children live with their mother, Della Mae Moore, except that the mother may make reasonable arrangements for the care of the children during her hours of employment.

2. That reasonable visitation rights be accorded to the father of the children.

3. That the custody of the children shall remain subject to the further order of this Court.

The order to be entered in this case is designed to meet the situation as it now apparently exists, but its terms are not irrevocable and may be modified from time to time with changing circumstances. The mother must refrain from doing anything to violate the confidence the Court is reposing in her. Should she do so, the Court will have no alternative but to place the custody of the children elsewhere.

On presentation, order accordingly.