## Hibbler v. Evans

*John Deutsch*, for petitioner.
*William H. Bayer*, for respondent.

HEIMBACH, *J.*, January 27, 1978—Ida Hibbler sought in this habeas corpus proceeding to gain custody of her grandchild, Lamont Hibbler, Jr. Respondent, Lillian Evans, is petitioner's daughter. We heard the matter and entered an order dismissing the petition and awarded custody to respondent. Petitioner having appealed to the Superior Court from such dismissal and award, we are meeting rule requirements by filing this opinion. Petitioner, in addition to excepting to the dismissal of her petition, argues we lack authority to include in our order the following statement and award of custody, viz.: "We will treat defendant's answer, paragraphs 7(A), (B) and (C), and her prayer as a counter petition for custody and, finding it to be to the best interests of the child, it is ordered and decreed that custody of Lamont Hibbler, Jr., is given to Lillian Evans."

We are not aware of any precedent for our order, but what was held and stated in In re: Custody of Minor Children of Rosenthal, 103 Pa. Superior Ct. 27, 33, 157 Atl. 342 (1931), we hold apposite and an answer to appellant's contention:

"The paramount issue—whether the jurisdiction of the court of the county in which the child happens to be at the time (Finlay v. Finlay, 148 Northeastern Repr. 624, and Com. v. Daven, [298 Pa. 416]) is invoked in habeas corpus proceedings, by petition, or by bill, or in any other way—is the best interest and permanent welfare of the child. The contract is not conclusive but must yield to this consideration: Com. ex rel. v. Manning, 89 Pa. Superior Ct. 301, 305. It would be a serious reflec-

tion upon our law if we were obliged to say, under all the circumstances here appearing, that the court below did not have jurisdiction upon this petition to inquire how this child's interests and permanent welfare would be best served and, in the exercise of a sound discretion, commit it to the care and custody of the person, whether parent or third party, best fitted in the opinion of the court to rear it and willing and able to assume that responsiblity. The law is not so weak. We have no doubt about the jurisdiction of the court below to make an order and are satisfied that the order entered was fully justified by the evidence. Both assignments are accordingly dismissed."

## HISTORY OF THE CASE

Some time in January, 1975, Lamont Hibbler, Jr., the child involved in this proceeding, was born. About six weeks later his parents separated. He, his two sisters, six and three years of age, and his brother, one and one-half years old, respectively, became wards of Children's Services of Carbon County and were placed in separate foster homes. They were cared for as foster children until the latter part of August 1975, when they were reunited with their parents, who had taken residence with petitioner, Ida Hibbler, in the latter's home. Lamont's father resided continuously with petitioner after he and his wife separated and until his wife and family rejoined him there. Approximately three or four weeks later, on September 21, 1975, both of Lamont's parents were killed in an automobile accident.

According to petitioner and her three witnesses, a daughter, son, and a neighbor, all the children, including Lamont, from such time until October 1,

1976, lived with and for the most part were taken care of by petitioner, Ida Hibbler, in her home, although according to petitioner, respondent Lillian Evans did keep and care for Lamont at the latter's home a couple of days a week and on week-ends to help her out. On October 1, 1976, according to petitioner, respondent and her husband, Dale Evans, called at her home and forcibly took Lamont away from her and have since such time refused to give him back.

Petitioner initiated the present proceedings on October 22, 1976. Prior to the hearing fixed for November 16, 1976, the parties at our direction met for a conference in the probation office. There the probation officer suggested, and the parties agreed, that respondent should retain custody of Lamont, with visitation privileges given to petitioner until the hearing every Saturday from one to five o'clock, subsequently changed to every Sunday from one to five o'clock.

In September 1977, petitioner failed to return Lamont after a visit. Several days later, on advice of counsel, Lamont was returned to respondent.

The matter finally reached us for determination.*

The testimony of respondent and her husband, Dale, is contrary to that of petitioner and her witnesses. Their testimony is that from the time of the death of Lamont's parents in September of 1975

---

*At the hearing we requested counsel to state for the record the reason for the delayed hearing. Counsel for petitioner denied any responsibility for the delay. Counsel for respondent stated he believed there was an understanding that continuance of the proceedings would be best so that in time the matter would be amicably adjusted. We share the recollection of respondent's counsel.

and up until the present time, with the exception of two weeks in May of 1976, Lamont resided with them and they have had the full care and support of Lamont during the entire period.

In view of the overwhelming corroborative testimony of respondent's witnesses, a neighbor, the former husband of her sister, a friend and frequent visitor at her home, a babysitter, Lamont's Sunday School teacher, and the pastor of respondent's church, that Lamont lived with respondent and her husband in their home and was cared for by them, we find such to be a fact and to this extent reject the contrary testimony of petitioner and her witnesses.

Since this is not a custody dispute between a parent and a third party, but between a grandmother and an aunt, both related by blood, we need not concern ourselves with any priority of custody rights: In re Custody of Hernandez, 249 Pa. Superior Ct. 274, 376 A. 2d 648 (1977); Ramos v. Rios, 249 Pa. Superior Ct. 487, 378 A. 2d 400 (1977); but need only decide what is the best interest and welfare of the child in awarding custody: Spells v. Spells, 250 Pa. Superior Ct. 168, 378 A. 2d 879, 882(4) (1977).

Applying this standard we have no hesitancy in finding the best interest and welfare of Lamont is by granting custody to respondent. She, together with her husband Dale, have solely supported Lamont from the time he was eight months old, this notwithstanding the fact that petitioner receives and keeps, with no objection from respondent, $530 a month from social security for the four grandchildren. Respondent and her husband have attended to his physical, intellectual, moral and spiritual well being. Lamont attends Sunday School and church regularly and is enrolled in the Infant, Toddler Day Care Program during the time respondent

works. Respondent is employed as a homemaker and works on an average of 20 hours a week, earning $300 plus a month. The director of the program testified she was a woman of character and compassion, and one whose services were specifically requested.

Without exception all witnesses, who we find were entirely credible, testified to the love and devotion given to Lamont by respondent and her husband, and the obvious love the child has for them. The home where respondent and her family (her husband and four other children, 15, 14, 12 and 7) live is a spacious and adequate home, with six bedrooms. Respondent's husband is regularly employed, with a take-home pay of $650 a month. The family is free of financial problems.

In passing we do make mention, but without the need for elaboration or comment, that respondent was married to her present husband, who is the father of all her children in 1972.

We are not without concern that Lamont will not be with his brother and two sisters, but in view of the blood relationship that exists and our belief that with the end of this proceeding family resumption of all will be had, we are able to put this consideration aside as being of lesser importance. We give much weight to the fact that Lamont will have a mother but 33 years old to look after his needs rather than an elderly grandmother, now 56 years old. In addition he will have a father to give him the love and affection all children should have.

For the reasons stated we reaffirm our order heretofore entered.