BETTY LEE HELTON et al., appellants, v. OMA LEE CRAWLEY, appellee.

No. 47495.

(Reported in 41 N.W. 2d 60)

February 7, 1950.

Johnson & Johnson, of Knoxville, for appellants.

Watson & Herrick, of Indianola, for appellee.

Bliss, C.J.—We will refer to the father as plaintiff. He and defendant, both lifetime residents of Missouri, were married in that state in February 1940. He was in the United States Navy when married, and at the time of the trial had been a member of the Navy continuously for twelve years. Though he had been away from Missouri during much of that time—having been in Greenland from October 1946 to March 1948—his legal resi-

dence had always been in that state. While he was away his wife and children lived in her home town, Cainesville, Missouri.

Defendant sued for divorce and custody of the children in the Circuit Court of Harrison County, at Bethany, Missouri. The husband filed answer and a cross bill asking for divorce and the custody of the children. Trial was had on the merits and the petition of the wife was dismissed, and on the cross bill the husband was granted a decree of divorce on May 3, 1948. The court took the matter of the custody of the children under advisement, leaving their temporary custody with their maternal grandmother.

On June 21, 1948, the court decreed that it would be for the best interests of the children that their permanent custody, care, and control be granted to the father from that day forward until each child should attain the age of twenty-one years, with the provision that they should be kept and cared for by him in a suitable private home where at all times they should have the care of an active, capable and proper female person of good habits and character. The court designated Mr. and Mrs. Clarence Bishop, of Trenton, Missouri, as such suitable persons.

The decree also provided that the children should not be taken from Missouri without express permission of the court; that the mother should at all times be kept informed as to their location and have the right to visit them at all reasonable times, and should be permitted once each year for any two-week period between June 1 and August 20 to have the custody of the children at any suitable place, or with her parents, and that during each year in each of six specified months, including October, the mother might have the children from ten a.m. Saturday until six p.m. of the following day, providing she did not take them out of the state of Missouri, and more than fifty miles distant from where they were living.

Defendant married Cliff Crawley and they established a good home a few miles west of Pleasantville, in Warren County, Iowa. On October 29, 1948, as provided in the decree, the mother received the children from the Bishops, who had brought them into Trenton for her. She took them out of Missouri and to her Iowa home without the knowledge or consent of the Missouri court or the plaintiff. She did not return the children to the

Bishops, but on November 1, 1948, she telephoned to the welfare office at Trenton that she did not intend to take the children back to that place.

On November 18, 1948, the petition for the writ of habeas corpus was presented to the Honorable S.E. Prall, a judge of the Fifth Judicial District of Iowa, alleging in substance the matters above set out, and the illegal restraint of the children, and praying that the writ should direct the officer serving it to bring the children and the defendant before the court for a hearing forthwith, for the reason that if defendant was simply given notice of a hearing at a later date, she would remove the children from their then location and secrete herself and them. He also prayed that upon the hearing the custody of the children be awarded to him. A copy of the Missouri divorce decree was attached to the petition.

Defendant, on November 19, 1948, filed answer admitting her present control and custody of the children at her home to which they came willingly, and denying any restraint of their liberty or any intention to remove the children to any secret place. Other allegations were in substance that she took the children from the place where they were kept because it was not a fit and proper place for them, and that she, in good faith and in order to protect them and further their welfare and to give them a good home and a mother's love, brought them to her home in Iowa; that since the rendition of the divorce decree conditions had changed and the welfare of the children demanded that the custody granted by said decree be changed; that the father to whom the custody of the children was therein given is not now a fit person to have their custody, and the place where he was keeping them, has, since said decree, become an unfit place for them, and the Bishops have since become unfit persons to care for said children; that she (defendant) since the rendition of said decree has established a good home and is well able to take care of, and give a mother's love to, the children, who wish to remain with her and were dissatisfied with the place from which they were taken; that the father is away much of the time and cannot give personal care and attention to the children.

It was also alleged in the answer that "under the laws of the State of Missouri, a decree awarding the custody of children

is not a final decree, and that the same may be changed, reversed, or amended at any time by the court entering the decree, if the welfare of the children requires it. * * * that said court entering the decree would have power to grant custody to this defendant, mother of said children, and would have power to change said judgment granting her custody, and would have the power to change said decree changing the times and terms under which this defendant could have said children, and would have the power to permit said children to be removed from the State of Missouri and taken to the State of Iowa." Defendant prayed that the custody of the children be granted to her, and that the petition of plaintiff be dismissed.

Plaintiff moved to strike much of the answer for the reason that there was "no allegation that plaintiffs [children] are domiciled in Iowa as a basis for the court's assuming jurisdiction for the purpose of making a determination as to whether there has been a change in circumstances since the decree in Missouri, and as to whether a change in custody from that ordered in Missouri should be made, and it appearing positively from the pleadings the domicile of the plaintiffs is in the State of Missouri."

After oral arguments on the motion it was overruled by the court for reasons stated at some length, the substance of which was expressed thus:

"It would seem that the full faith and credit clause of the Federal Constitution requires courts in all states of the United States to recognize the decrees of courts of the state where granted when that decree has become a finality * * *. However, in divorce cases where the custody of children is concerned * * * I think in most states, at least in this state, they are subject to change, if the conditions justify the change. So that under the Iowa law and under the Missouri law the decision of the Missouri court as to the facts and circumstances at the time the decree was entered is a finality. However, where there is a change of circumstances which ought to justify the change by the court in Missouri, it would seem from the cases that the court where the case is being tried would have the right to make such changes as would appear to be proper. * * * In other words [speaking of the ruling on the motion only], that is the

question the court is deciding here, not on the evidence as to whether there should be a change made in the decree, but whether this court has a right to consider the question. * * * The court holds that it does have jurisdiction of the matter to determine it and to hold a hearing on the questions raised by the pleadings."

We agree with the ruling of the court. It was based on sound principles and preponderant precedent.

The trial was then postponed to hear testimony on the factual issue of whether there had been a material change, since the Missouri decree, in the conditions and circumstances bearing upon the best interests and welfare of the children. On November 26, 1948, plaintiff filed a reply to defendant's answer in which he admitted the ages of the children, as alleged, and that defendant was their mother; denied the other fact allegations, and realleged the questions of law raised in the motion, and that the children were domiciled in the State of Missouri, and were forcibly brought therefrom into Iowa where they have neither residence nor domicile; that the State of Missouri has exclusive jurisdiction to determine the custody of the children, and the court of the forum "has no jurisdiction to determine the matter of custody other than for the purpose of honoring the Missouri decree and giving custody to Elza Lee Helton." The plaintiff so prayed in the reply.

When the trial was begun on December 2, 1948, before the District Court of Warren County, Iowa, the following proceedings were had: Defendant orally admitted that the Missouri court was one of competent jurisdiction to render and enter the divorce decree, copy of which was admitted in evidence without objection, and that the custody of the children was in issue in said Missouri proceeding.

Following these admissions plaintiff then orally moved that because thereof the court had no alternative than to enter a decree in favor of the plaintiff awarding the custody of the children to him, in view of the fact that the court of the forum was bound under Article IV, section 1, of the Constitution of the United States to give full faith and credit to the Missouri decree. The court overruled the motion upon the grounds that infant-custody decrees were ordinarily not within the purview of the Constitutional provision in that said decrees were generally

not final in the sense of being fixed and unalterable, but were temporary, provisional, and subject to modification as changing conditions and circumstances might require, and, furthermore, that in making any such modification the Iowa court would be doing only what the Missouri court would do under like circumstances, and would be giving to the Missouri decree the same force and effect that it has in the jurisdiction where rendered.

Plaintiff states in his printed argument that "the full faith and credit clause is not the basis of the appellants' argument in this case * * * and it is not argued that where there has been a change of circumstances it is a violation of the full faith and credit clause to make a change in the award and custody." Later in his argument he asserts that the clause is a matter for consideration in the appeal.

There was a trial as an equitable proceeding upon the merits and both sides offered testimony upon the issues made by the pleadings. Testimony was received from a number of witnesses produced by defendant tending to show that since the divorce she had remarried and established a home and that the circumstances had changed since the Missouri decree, and that it was for the best interests of the children that they be in the custody, care and control of the defendant. The plaintiff, defendant, and their two children, whose custody was in controversy, were not only in court by their pleadings and by their respective attorneys, but they were also physically present in the territorial jurisdiction of the court, and in the courtroom during the trial. The plaintiff and Mr. Clarence Bishop, one of the special custodians selected by the Missouri court, testified for plaintiff.

On December 13, 1948, the trial court filed its written findings and decree reciting the appearance of the parties and their attorneys, the trial and submission of the cause. It found that the Missouri court had jurisdiction to render the decree granting divorce to plaintiff herein, and awarding to him the custody of the children. It also found that defendant took the children, who were in her care and custody on October 29, 1948, from Missouri into Iowa and that "she is now furnishing them a proper home. That since the entry of the decree in the Missouri court * * * conditions have changed, and that it is for the best interests of * * * Betty Lee Helton and Joan Eloise Helton, by reason of

said changes, that they be left with the defendant herein, Oma Lee Crawley * * * and that the said Oma Lee Crawley be now given the care, custody and control" of said children. The court rendered judgment and decree in accord with its findings of fact and conclusions of law, dismissing the petition, and taxing the costs against Elza Lee Helton.

The printed record states: "The testimony is not abstracted for the reason that plaintiffs are not appealing from the ruling of the court on the question of change in circumstances. The plaintiffs do not on this appeal raise the question of whether the lower court erred in finding that there had been a change of circumstances since the date of the Missouri decree." In plaintiff's reply argument it is stated: "The question of whether there was a change of circumstances is not before this court."

It may also be said that the appeal does not challenge the decree or the finding of the court that it was for the best interests and welfare of the children that their care, custody and control be awarded to the defendant, or the sufficiency of the evidence to sustain said finding. So that the appeal comes to the court on a record which establishes as facts that there had been a change of circumstances since the Missouri decree, and that the best interests and welfare of the children required the award of their custody to the defendant.

In giving the "scope of the appeal" in the foreword of the printed argument, plaintiff states that the appeal is specifically limited to the following questions: 1. Did the Iowa court have jurisdiction to make an award of custody different from that made by the Missouri court? 2. Did the Iowa court fail to give full faith and credit to the decree of the Missouri court? 3. As a matter of comity between states, did the Iowa court err in looking into the matter of whether or not there had been a change of circumstances since the date of the Missouri decree, taking into consideration the recent Missouri trial and decree, the terms of the decree, and the manner in which the children were obtained and brought into Iowa?

Again referring to the "scope of the appeal", the printed argument states:

"This appeal is limited solely to the question of whether the Iowa court should have assumed jurisdiction to make a perma-

nent award of custody—in other words, whether the Iowa court should have gone into the question of change of circumstances in view of the fact that the children were still domiciled in Missouri and had been brought surreptitiously into Iowa by the mother."

He states but one proposition on which he relies for reversal, to wit: "The trial court should not have assumed jurisdiction to determine the matter of permanent custody of the children." The court did not make a "permanent" award of custody, and its decree did not so state. Decrees for the custody of minor children are always open to change if changed conditions require it. Goodrich v. Goodrich, 209 Iowa 666, 668, 228 N.W. 652.

Under plaintiff's proposition he states four brief points:
(a) The children are domiciled in and are residents of Missouri.
(b) The Missouri decree is entitled to full faith and credit in Iowa.
(c) The Missouri court retained jurisdiction to modify its custodial award.
(d) "The courts of a state into which minor children are brought temporarily, illegally, or in violation of a decree of a sister state, which children are not domiciled in or residents of the state into which brought, have no jurisdiction, or, as a matter of comity, should not assume jurisdiction to make an award of permanent custody of the children different from that of the sister state in a dispute between parents."

In further elaboration of brief point (d) plaintiff states:

"This section of our brief and argument presents the crux of the case. Our position is that the Iowa courts have no jurisdiction under the circumstances of this case to make an award of permanent custody; or, if the Iowa courts do have such jurisdiction, they should not as a matter of comity exercise it. The circumstances in this case are that a sister state with unquestioned jurisdiction has made an award of custody, that the children are still domiciled in and residents of such state, that they were brought into Iowa in violation of the decree of the sister state by a person not entitled to their permanent custody, and that the case arises as a dispute between divorced parents and not for the purpose of protecting a child being abused and neglected in this state."

Hulled down to the nut, plaintiff relies for reversal on two propositions, first, that the trial court had no jurisdiction to award custody of the two little girls to their defendant-mother, and, second, if it had such jurisdiction, under the doctrine of comity between the states, it should not have exercised it.

Plaintiff does not base his contention of lack of jurisdiction on any principle of law, nor on any single stated fact, but upon the combination of circumstances which he lists as set out above. Before discussing these circumstances, severally or in combination, noted in brief point (d), we will pass to brief points (a), (b), and (c).

I. (a) The children are domiciled in and are residents of Missouri. Minor children, ordinarily, are incapable of choosing a domicile, and if they are living with their parents the law makes their father's domicile their domicile. By the Missouri decree of divorce the plaintiff was made a legal custodian of the children, and his domicile being in Missouri that state was also the domicile of the children. It remained their domicile until they obtained another one, and that occurred when the trial court awarded their custody to their mother and they then took her Iowa domicile. The defendant has made no contention to the contrary, but she does not concede that the Missouri domicile of the children is a controlling factor in this case.

As stated in State ex rel. Board of Christian Service v. School Board, 206 Minn. 63, 66, 287 N.W. 625, 626, and quoted with approval in In re Guardianship of Campbell, 216 Minn. 113, 119, 11 N.W. 2d 786, 789:

"Ordinarily, the domicile of an infant is, by law, the same as the father's, if living. * * * Generally, the infant has no choice as to his domicile and has no legal power to change it. With respect to residence, the law is more liberal. Where that alone is involved, an infant can acquire one different from that of his domicile or the domicile of his father or guardian. [Citing authorities.]"

With respect to the residence of the children she concedes that they were residents of Missouri until she brought them into Iowa, but asserts that thereafter they abided with her, lived with her, and resided with her and her husband in their home

in Warren County, Iowa, with the intention on her part to keep them there. We agree with the contentions of the defendant in the matters above set out, but will discuss them further under brief point (d).

II. Brief point (b). The Missouri decree is entitled to full faith and credit in Iowa.

Article IV, section 1, of the Constitution of the United States provides that "Full Faith and Credit shall be given in each State to the \* \* \* judicial Proceedings of every other State." Without doubt the provision of the Missouri decree awarding the custody of the children to their father was within the protection of this constitutional clause and entitled to recognition outside of Missouri, and cannot be questioned with respect to facts on which the decree was based. But the Missouri custodial decree is res judicata of only what was at issue in said cause and adjudicated by that court, and it is protected by the constitutional provision only to that extent. Judicial decrees and orders providing for the custody of minor children are not unalterable finalities, even though they may appear so on their face, but are provisional and subject to change as future conditions and circumstances may require in the best interests and for the welfare of the children. When such changes or modifications are later made by a court of the state which rendered the original decree, or by a court of another state, such subsequent decrees or judgments will not be in contravention of the constitutional command, or attacks on the earlier judicial proceeding.

We must accept the record before us as establishing that there were changes, subsequent to the rendition of the Missouri decree, in the conditions and circumstances surrounding the children to sustain and justify the decree of the trial court in changing the custody as fixed by that decree, and awarding their custody to the mother of the children.

The principles of law above-stated are sustained by all authorities. Just a few are noted: Barnett v. Blakley, 202 Iowa 1, 5, 6, 209 N.W. 412; Jensen v. Jensen, 237 Iowa 1323, 1324, 25 N.W. 2d 316, and cases cited; Calkins v. Calkins, 217 Ala. 378, 115 So. 866, 868; Dixon v. Dixon, 76 N.J. Eq. 364, 74 A. 995, 996; Goldsmith v. Salkey, 131 Tex. 139, 112 S.W. 2d 165, 169, 116 A.L.R. 1293; In re Leete, 205 Mo. App. 225, 223 S.W. 962, 966;

Sampsell v. Holt, Utah, 202 P. 2d 550, 553; Moloney v. Moloney, 167 Kan. 444, 206 P. 2d 1076.

Apart from the constitutional provision, it is the duty of the courts of any state to give effect to a properly rendered judgment of the courts of another state, and to recognize as res judicata any issues settled by that judgment.

There is another reason why the trial court did not violate the full faith and credit clause. A statute of Missouri provides, and its decisions hold that its courts may modify a child-custody decree if subsequent changing conditions require it. In re Krauthoff, 191 Mo. App. 149, 168, 177 S.W. 1112, 1119, 1120 (wherein the court states that the parties could not have made an irrevocable agreement concerning the custody of their child, "nor indeed could the court have rendered such a decree."); Sanders v. Sanders, 223 Mo. App. 834, 14 S.W. 2d 458, 459, 463.

The Federal constitutional provision on which plaintiff relies requires that a state shall give to the decree or judgment of a court of a sister state only the force and effect to which it is entitled in the state where it is rendered, and if the courts of the latter state can modify a minor-child-custody order or decree upon a proper showing of a change of circumstances since its rendition, the courts of another state can do likewise. Goodrich v. Goodrich, supra, 209 Iowa 666, 668, 228 N.W. 652; Frick v. Kaufman, 310 Ky. 829, 222 S.W. 2d 185, 186; Freund v. Burns, 131 Conn. 380, 40 A. 2d 754, 755; Sistare v. Sistare, 218 U. S. 1, 17, 30 S. Ct. 682, 54 L. Ed. 905, 28 L. R. A., N. S., 1068, 20 Ann. Cas. 1061; Ansorge v. Armour, 267 N. Y. 492, 196 N.E. 546; New York ex rel. Halvey v. Halvey, 330 U. S. 610, 67 S. Ct. 903, 91 L. Ed. 1133; 50 C. J. S., Judgments, section 889(5), page 487; Goldsmith v. Salkey, Tex. Civ. App., 115 S.W. 2d 778, 781; Cole v. Cole, 68 Idaho 561, 201 P. 2d 98; Tilt v. Kelsey, 207 U. S. 43, 57, 28 S. Ct. 1, 6, 52 L. Ed. 95, 101, 102. In the last-cited case the court said:

"When, therefore, we come to consider what faith and credit must be given to these judicial proceedings of New Jersey, we must first ascertain what effect that State attaches to them. The statute enacted to carry into effect the constitutional provision provided that they should have in any court within the United States such faith and credit 'as they have by law or usage in

the courts of the States from which they are taken.' Act of May 26, 1790 [1 Stat. at L. 122, ch. XI]. They can have no greater or less or other effect in other courts than in those of their own State. Cheever v. Wilson, 9 Wall. 108 [19 L. Ed. 604]."

The trial court gave to the Missouri decree all the faith, credit and effect to which it was entitled.

 III. Brief point (c). The Missouri decree retained jurisdiction to modify its custodial award.

The fact that said decree retained such jurisdiction is of no consequence in this case. Such retained jurisdiction could in no manner or degree affect or limit the jurisdiction of the District Court of Warren County, Iowa, particularly, when the plaintiff invoked the jurisdiction of that court to determine the custody of the children, and it had jurisdiction of the subject matter and of all necessary, and interested parties. There is no merit in this brief point and proposition. Goldsmith v. Salkey, supra, 131 Tex. 139, 112 S.W. 2d 165, 168, 169, 116 A. L. R. 1293.

IV. Brief point (d). We will not repeat it. We will discuss first plaintiff's statement therein that the trial court had no jurisdiction "under the circumstances of this case" to make the custody award which it did make. Later we will take up the matter of comity referred to in the brief point.

 The action instituted by plaintiff is the statutory proceeding of habeas corpus. At common law the prerogative writ of habeas corpus ad subjiciendum was to require one unlawfully detaining another to produce him and submit to the court's order. The Iowa statute (section 663.1, Code of 1946, I. C. A.) on its face applies to one who is illegally restrained or imprisoned. But as applied to the custody of minor children, the courts generally, and this court, rather tardily, have modified and enlarged the scope and original purpose of the writ, and now consider and treat the proceeding as invoking the broad and highly equitable powers of the court, to the end that the paramount and ultimate consideration of the court is the best interests and welfare of the infants and minor children brought before it. Barnett v. Blakley, supra, 202 Iowa 1, 5, 209 N.W. 412. This is on the theory, as stated in Risting v. Sparboe, 179 Iowa 1133, 1137, 1138, 162 N.W. 592, 594, L. R. A. 1917E 318,

"that every child is born a citizen, and is vested with the rights and privileges of citizenship entitling it to governmental protection; and the government can meet its obligation to protect only by consulting the welfare of the child in regulating its custody during the period of its minority. * * * In this class of cases, three interests are involved—of the parents, of the state, and of the child; and, of these, the most important and controlling is that of the child, for by a proper decision as to that, the other interests are best subserved." In Herr v. Lazor, 238 Iowa 518, 527, 28 N.W. 2d 11, 16, we reannounced the following statement in Jensen v. Jensen, 237 Iowa 1323, 1324, 1325, 25 N.W. 2d 316, 317: "We have said time and again, and the modern authorities agree, that in a matter of this kind the welfare of the child is superior to the claim of either parent and the wishes of the parent are entitled to little if any consideration." Statements of like import have been many times expressed by this court. See Freese v. Freese, 237 Iowa 451, 458, 459, 22 N. W. 2d 242, 246; Lancey v. Shelley, 232 Iowa 178, 2 N.W. 2d 781; Maron v. Maron, 238 Iowa 587, 591, 28 N.W. 2d 17; Ellison v. Platts, 226 Iowa 1211, 1215, 286 N.W. 413; Paulson v. Windelow, 236 Iowa 1011, 1016, 1017, 20 N.W. 2d 470; Lursen v. Henrichs, 239 Iowa 1009, 1013, 33 N.W. 2d 383, 385; Jensen v. Sorenson, 211 Iowa 354, 367, 233 N.W. 717; Allender v. Selders, 227 Iowa 1324, 1330, 1331, 291 N.W. 176. These cases were treated and tried in equity as equitable proceedings, and by the application of the principles of equity in the trial court, and were reviewed on appeal de novo. In Allender v. Selders, supra, 227 Iowa at page 1330, we quoted from State ex rel. Jones v. West, 139 Tenn. 522, 527, 201 S.W. 743, 744, Ann. Cas. 1918D 749, as follows: "As it affects the custody of infants, the writ of habeas corpus rests on the assumption of *a right in the State,* paramount to any parental or other claim, to dispose of such children as their best interests require." (Italics ours.)

In tracing the history of this "right in the State," the Tennessee court in said opinion (page 526 of 139 Tenn.) quoted from the discussion of Judge Betts concerning the enlargement of the function of the writ of habeas corpus, in the case of In re Barry, C. C. N. Y., 42 F. 113, 118, thus:

"* * * the sovereign, through this writ, acts * * * in regard to infant children, as *parens patriae*, making, in these high capacities, summary order that the party be forthwith set at liberty, if improperly and wrongfully detained. [Citing cases.] The state, thus acting upon the assumption that its parentage supersedes all authority conferred by birth on the natural parents, takes upon itself the power and right to dispose of the custody of the children, as it shall judge best for their welfare. [Citing cases.]

"The cases before cited show that the English and American courts act in this behalf solely upon the assertion of the right of the sovereign whose power they administer, to continue or change the custody of the child at his discretion, as *parens patriae*."

Continuing, the Tennessee opinion states: "Under the change of government from a monarchy to a republic, the functions of *parens patriae* did not cease to exist. Such authority passed from the king to the government of the State or sovereign people."

In In re Badger, 286 Mo. 139, 146, 147, 226 S.W. 936, 938, 939, 14 A. L. R. 286, 290, an often-cited opinion, the court in discussing the well-established jurisdiction of equity in the protection of infants, said:

"Jurisdiction as to the Custody of Minors.—Whether this jurisdiction had its origin in the fiction of the right of the King as parens patriae, to which we referred approvingly in State ex rel. Cave v. Tincher, 258 Mo. 1, [166 S.W. 1028, Ann. Cas. 1915D 696] * * * or that it was originally an usurpation for which the best possible excuse was that it afforded opportunity for the beneficent exercise of a power peculiarly equitable in its nature which had not otherwise been sufficiently provided for, is immaterial * * *. This much is certain: It exists and has been exercised by courts of equity for more than two centuries in England and in the different states of this Republic for shorter periods of time but for like reasons and purposes. [Citing 3 Pomeroy's Equity Jurisprudence, Fourth Ed., notes 1 and 2 to section 1304, page 3141, and other authorities.]

"It will be seen not only from the lucid text of Pomeroy but from the adjudicated cases, that the inherent power of a

court of equity over the persons and estates of infants is very wide. [Citing authority.] While it is technically true that a requisite to jurisdiction is that the infant must be a ward of the court, it is not necessary that it be a public charge or that the purpose of the proceeding be to so declare it * * *; it becomes the ward of the court when it is brought before it for any purpose; and any proceeding or application in equity relating directly to the infant is sufficient. [Citing cases.] Statutory regulations as to the custody and care of infants will not affect the court's jurisdiction. [Citing cases.]

"The infant's ownership of property is not essential to the existence of jurisdiction."

In the law dictionaries of Bouvier, Black and Ballentine, the term parens patriae is defined as the father or parent of his country; in England, the King; in America, the people; the government is, thus spoken of in relation to its duty to protect and control minor children and guard their interests. In cases involving the custody of minor children, whether it be by divorce or separation proceeding, by habeas corpus, petition to the chancellor, or other equitable proceeding, the court, as a department of the state, in thus exercising its inherent power and jurisdiction in equity, is spoken of as acting in the capacity of parens patriae. In re Cooke, 114 Vt. 177, 41 A. 2d 177, 180; New York Foundling Hospital v. Gatti, 203 U. S. 429, 439, 27 S. Ct. 53, 55, 51 L. Ed. 254; Durfee v. Durfee, 194 Misc. 594, 87 N. Y. S. 2d 275; Ex parte Bowers, 78 Or. 390, 153 P. 412, 413; Smith v. Smith, Tenn., 220 S.W. 2d 627, 630; Finlay v. Finlay, 240 N. Y. 429, 435, 148 N.E. 624, 626, 40 A. L. R. 937; In re Pratt, 219 Minn. 414, 18 N. W. 2d 147, 153; Bartlett v. Bartlett, 175 Or. 215, 152 P. 2d 402, 406; Ex parte Flynn, 87 N. J. Eq. 413, 100 A. 861, 862; Buckley v. Perrine, 54 N. J. Eq. 285, 34 A. 1054; People ex rel. Herzog v. Morgan, 287 N. Y. 317, 39 N.E. 2d 255, 256; In re Bopp, 58 N. Y. S. 2d 190; McKamey v. State ex rel. Winston, Tenn., 222 S.W. 2d 26, 27; White v. White, 214 Ind. 405, 15 N.E. 2d 86, 88; Scott v. Scott, Ind., 86 N.E. 2d 533, 536; Boone v. Boone, 80 U. S. App. D. C. 152, 150 F. 2d 153, 155; Langan v. Langan, 80 U. S. App. D. C. 189, 150 F. 2d 979, 980; McMillin v. McMillin, 114 Colo. 247, 158 P. 2d

444, 448, 160 A. L. R. 396; Crowell v. Crowell, 184 Or. 467, 198 P. 2d 992, 994.

There is no dissent among the authorities or decisions to the doctrine of parens patriae as above stated. Other child-custody cases, without using the Latin term, announce the same principle of law. Avenier v. Avenier, Tex. Civ. App., 216 S.W. 2d 638, 641, states it thus:

"The principle underlying the Texas rule recognizing custody jurisdiction of a child, even though the parents and the child have a domicile or domiciles outside the State is 'the welfare of society, primarily as evidenced by the welfare of the child, but involving also the right, and, for that matter, the duty, of a state, being the relatively independent sovereign that it is, to look after the welfare of individuals within its borders * * *.' Wicks v. Cox, [146 Tex. 489, 4 A. L. R. 2d 1] 208 S.W. 2d 876, 878."

See also Starnes v. Albion Mfg. Co., 147 N. C. 556, 61 S.E. 525, 526, 17 L. R. A., N. S., 602, 15 Ann. Cas. 470; Burns v. Shapley, 16 Ala. App. 297, 77 So. 447, 449. As stated by Tiedeman, 1 State and Federal Control, 335: "Minors are the wards of the nation, and even the control of them by parents is subject to the unlimited supervisory control of the State."

Minor children are not only wards of the state in which they are residing but they are the wards of any court having jurisdiction of their persons in any proceeding involving their custody, or their personal or property rights. "After the court's jurisdiction has been invoked by habeas corpus petition seeking custody of a child, the child is a ward of the court and its welfare lies in the hands of the court." 39 C. J. S., Habeas Corpus, section 41, page 570. And as said in Sangster v. Toledo Mfg. Co., 193 Ga. 685, 690, 19 S.E. 2d 723, 726: "An infant becomes a ward of the court whenever he is brought before the court for any purpose, as a party plaintiff or defendant to a suit, petition, order, application, or any other proceeding." For like decisions, see Hanson v. Hanson, 150 Neb. 337, 34 N.W. 2d 388, 392; Evans v. Taylor, Tex. Civ. App., 128 S. W. 2d 77, 78; Esco v. Davidson, 238 Ala. 653, 193 So. 308; Honadle v. Stafford, 265 N. Y. 354, 193 N.E. 172, 173; Montgomery v. Erie R. Co., 3 Cir.,

N. J., 97 F. 2d 289, 292; Ely v. Ely, 323 Mich. 269, 35 N.W. 2d 163, 164.

The prerogative of the sovereign, whether king or state, in the protection of infants, has passed to the courts of chancery and equity for its exercise and dispensation. This jurisdiction, as said in Townsend v. Kendall, 4 Minn. 412, 417, 77 Am. Dec. 534, 535, "is plenary and potent to reach and afford relief in every case of an improper exercise of power." In the often-quoted words of Justice Brewer when a member of the Supreme Court of Kansas, in In re Bort, 25 Kan. 308, 310, 37 Am. Rep. 255, 257: "* * * a court of chancery stands as a guardian of all children, and may interfere at any time and in any way to protect and advance their welfare and interests." Expressing the same thought the Court of Chancery of New Jersey, in In re Erving, 109 N. J. Eq. 294, 297, 157 A. 161, 163, said:

"Besides the jurisdiction conferred upon the court of chancery by statute, it has authority under its general equity powers to deal with the custody of infants, which authority is in no way dependent upon statute. Its authority is so broad that the permanent custody may be fixed even in disregard of the legal rights of parents where the welfare of children requires it."

In Finlay v. Finlay, supra, 240 N. Y. 429, 433, 148 N.E. 624, 626, 40 A.L.R. 937, 940, the Court of Appeals of New York, speaking through Justice Cardozo, of jurisdiction in chancery in a child-custody case, said:

"The chancellor in exercising his jurisdiction upon petition does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other or indeed against anyone. He acts as parens patriae to do what is best for the interest of the child. He is to put himself in the position of a 'wise, affectionate and careful parent' (Queen v. Gyngall, [2 Q. B. Div. 232, 238]), and make provision for the child accordingly. * * * He is not determining rights 'as between a parent and a child' or as between one parent and another (Queen v. Gyngall, supra). He 'interferes for the protection of infants, qua [as] infants, by virtue of the prerogative which belongs to

the Crown as parens patriae' (Matter of Spence, [2 Phil. Ch. 247, 248])."

This court is, and has been, in full accord with the substantially universal decisions of the courts that a court of equity has inherent power and jurisdiction in all proceedings involving the custody of minor children, and that in exercising that power and jurisdiction it acts in the capacity of parens patriae, as a department and agency of the State. In Mollring v. Mollring, 184 Iowa 464, 471, 472, 167 N.W. 524, 527, in discussing child-custody powers under the divorce statute, speaking through Justice Salinger, the court said:

"But though the function of the district court, while entertaining a divorce suit, is thus limited, it does not follow that the *court* had no inherent power to deal with the custody of infants. The district court has the powers of the chancery courts. The chancery court has original jurisdiction over the custody of infants as *parens patriae*. See Power v. Power, 65 N.J. Eq. 93 (55 Atl. at 111, 114). And it was held in Cowls v. Cowls, 3 Gilman (Ill.) 435, that such statute as we have confers no new authority or jurisdiction upon the chancery court. Where the question is the right to the permanent custody of children, the chancellor may, by virtue of his inherent jurisdiction, as public guardian of infants, fix their status in habeas corpus proceeding. Buckley v. Perrine, 54 N.J. Eq. 285 (34 Atl. 1054, [1057].) * * * and the district court of Iowa * * * has inherent power to fix the permanent custody of infants."

Just recently, in Addy v. Addy, 240 Iowa 255, 260, 36 N.W. 2d 352, 356, Justice Garfield, speaking for the court, said: "It is firmly established that equity has inherent power to protect the rights of minors." (Citing authorities.)

The district court had jurisdiction of the subject matter, the custody of the children, and of all necessary and interested parties. The mother of the children, the defendant, was domiciled in, and a legal resident of, Warren County, Iowa, and the children were living with her. The plaintiff, father of the children, and their legal custodian, appeared in court by his petition and brought the children physically into the court and made them wards of the court by the writ of habeas corpus

which he.procured. By the prayer of his petition he invoked the jurisdiction of the court to determine the custody of the children. By so doing as stated in Power v. Power, 65 N.J. Eq. 93, 101, 55 A. 111, 115, he "submitted himself to the jurisdiction of the court, asking for the custody of those children, and, so to speak, provoked the very counter petition which is filed here * * *." The defendant herein answered and alleged that it was to the interest and welfare of the children that she be awarded their custody, and so prayed. Plaintiff denied the allegations of defendant's answer and took issue therewith in his reply. There was nothing lacking for the complete jurisdiction of the court and a valid decree.

Under procedure and facts quite identical in every material respect, the court in Ex parte Peddicord, 269 Mich. 142, 145, 256 N.W. 833, 834—a habeas corpus proceeding by the father against the mother who had violated a custodial provision of an Indiana divorce decree by taking the child on a visit to Michigan and refusing to return it, the father raised the jurisdictional challenge, which was rejected, and after trial on the merits the child was awarded to the mother, and decree affirmed on appeal. The court said:

"When petitioner filed his petition for a writ of habeas corpus all of the parties were in Michigan and within the jurisdiction of the Delta county circuit court. Petitioner, having submitted to that court the issue of the custody of the child and invoked its jurisdiction * * * cannot now complain of its lack of jurisdiction but must abide the decision of the Michigan court."

People ex rel. Wagner v. Torrence, 94 Colo. 47, 53, 27 P. 2d 1038, 1040, was a habeas corpus action by the father against the mother for the custody of their two minor children. Parties were divorced in Wisconsin and mother awarded the children but was not to take them from Wisconsin without order of court. Later they were awarded to the father and then re-awarded to the mother, who took them to Texas and Colorado without permission of the court. The Wisconsin court then adjudged her in contempt and changed the custody to the father. He raised the jurisdictional question and alleged her violation of the Wis-

consin decree, and the contempt adjudication, in the Colorado court. After trial on the merits the children were awarded to her and decree was affirmed. The supreme court said: ·

"The petitioner by his answer to the return, invoked the jurisdiction of the court on the question of custody. This then became an equity matter and a court of equity is the ever qualified and zealous guardian of all children of tender years and will exercise its powers at any time, any place, in such a way as their protection requires."

In Scott v. Scott, Ind., 86 N.E. 2d 533, 536, the father wrongfully obtained possession of minor son in Indiana whose custody had been awarded to the mother by her California decree of divorce, and also by his Nevada decree of divorce. In her habeas corpus action in Indiana the court gave the child's custody to the father because of changed conditions. The judgment was affirmed. The court said: "By filing her habeas corpus action in the trial court, appellant necessarily submitted to its jurisdiction and to the trial of such issues therein as might be presented lawfully."

This court in Franklin v. Bonner, 201 Iowa 516, 518, 207 N.W. 778, 779, defined jurisdiction thus: "We are dealing here with a question of jurisdiction, which may be defined as the power conferred upon a court to take cognizance of and to decide cases in law, equity, or special proceedings, *and to carry its judgments and decrees into execution.*" (Italics ours.) The trial court had all of these essentials. It could make effective any proper decree. The children were in its custody and jurisdiction.

In State ex rel. Clark v. Clark, a habeas corpus case, 148 Fla. 452, 453, 4 So. 2d 517, 518, the court said:

"This court has held that infants are wards of the court having jurisdiction of their person, Dorman v. Friendly, [146 Fla. 732, 737, 1 So. 2d 734, 736 (habeas corpus case)]. We held: 'A court must not only have jurisdiction of the parties but it must have jurisdiction of the subject matter also. The subject matter involved in the question of custody of minor children is the children themselves, and if the court has not jurisdiction

of the children it has not jurisdiction of the subject matter to determine the right of custody as between the parties to the suit over which it may have jurisdiction.' " (Citing cases.)

In Lake v. Lake, 63 Wyo. 375, 410, 182 P. 2d 824, 838, the court quoted 2 Nelson on Divorce and Annulment, Second Ed., sections 15.32, 15.33, thus:

" 'To enter a valid judgment or decree a court must not only have jurisdiction of the parties but it must also have jurisdiction of the subject matter. The subject matter involved in a proceeding to determine the question of custody of minor children of parties to a suit for divorce is the children themselves, and if the court does not have jurisdiction of the children it does not have jurisdiction of the subject matter to determine the right of custody.' "

The opinion cites numerous authorities. See also Gilman v. Morgan, 158 Fla. 605, 607, 29 So. 2d 372, 373, certiorari dismissed on motion of petitioners, Morgan v. Gilman, 331 U.S. 796, 67 S. Ct. 1740, 91 L. Ed. 1822, in which it is said: "The minors are the res and without their presence within the jurisdiction of the court its judgment cannot be enforced and is a nullity."

V. Plaintiff challenges the jurisdiction of the trial court and bases his contention for lack thereof on certain facts. Two of these being that the children were domiciled in and residents of Missouri. Keeping in mind the dominant fact that it is the best interests and the welfare of infants and minor children that is the supreme concern and consideration of the State, as against which all other claims, rights, relations, and persons sink into insignificance, it becomes clear that their domicile is not the essential factor which calls for the exercise of the sovereign protection, care, control, and custody of them, but all that is necessary is the *presence* of the infants in the state—*that they are within its borders.* When that is the fact, be the infant a destitute, unprotected, homeless waif, or the subject of litigation for his custody between his parents or others, and not without care, the State, in the first instance, through its agencies, takes direct and immediate protective action, and in the second, in any litigation involving the custody

of the infant, be it divorce, habeas corpus, or other proceeding in equity, the State injects itself as a vitally interested third party.

An adult or a child may be domiciled in one state and live or reside in another state. In re Estate of Jones, 192 Iowa 78, 80, 182 N.W. 227, 16 A.L.R. 1286. In the case of a child, it ordinarily needs the protection of the sovereign and the exercise of the supervisory powers of the chancellor in the State where he is living rather than in that of his domicile, or of his technical legal residence.

There are a few cases in which the court has declined to exercise jurisdiction where the child was domiciled in another state, but such holdings are contrary to the great majority of decisions. The latter decisions are that where there is a controversy over the custody of a child and the aid of the court has been invoked to determine the issue and the litigants are properly before the court, and the infant is physically present and is within the borders of the state and the territorial jurisdiction of the court, it has jurisdiction and it is the duty of the court to assume and exercise that jurisdiction, notwithstanding the domicile, or the so-called legal residence of the child, is in another state. We note some of these decisions and authorities: (The italics are all ours.) Burns v. Shapley, 16 Ala. App. 297, 299, 77 So. 447, 449: "The theory upon which the court proceeds in such cases is that the custody and control of the parent over his minor children is a trust committed to him by the state, and this trust is dominated by the supreme guardianship of the state as parens patriae of *all infants within its border."* People ex rel. Wagner v. Torrence, supra, 94 Colo. 47, 52, 27 P. 2d 1038, 1039: "Here he [petitioner in habeas corpus] was met face to face with the state, the third party in interest in cases of this character, ready to administer to the protection of the helpless child *found within its borders. This jurisdiction does not depend on the domicile of the parents, neither does it stand by, for a judgment of another state."* McMillin v. McMillin, 114 Colo. 247, 251, 158 P. 2d 444, 446, 160 A.L.R. 396, 399: A Michigan decree awarded child to the father. The mother took child to Colorado. Because of no change of conditions the custody was left with the father. But the court said: "It is true, as urged by respondent's [mother's] counsel, that the primary

and controlling issue is the welfare of the child * * *. It further is true that our Colorado court has jurisdiction as parens patriae to protect *any child within its borders, notwithstanding its residence [is] elsewhere."* Woodworth v. Spring, 4 Allen (Mass.) 321, 322, a habeas corpus action by an Illinois guardian of child, both domiciled in said state, against guardian of the child appointed in Massachusetts, where child was living. Relief was denied and judgment was affirmed. The excellent and widely quoted opinion by Chief Justice Bigelow, states:

"We are unable to see that the facts that the child was born in another state, and that he has never by an act or election of his own or of his guardian obtained a new home here, have a decisive bearing on the question at issue in the present case. He is now lawfully within the territory and under the jurisdiction of this commonwealth, and has a right to claim the protection and security which our laws afford to all persons coming within its limits, irrespective of their origin or of the place where they may be legally domiciled. Every sovereignty exercises the right of determining the status or condition of persons found within its jurisdiction. The laws of a foreign state cannot be permitted to intervene to affect the personal rights or privileges even of their own citizens, while they are residing in the territory and within the jurisdiction of an independent government. * * * The question whether a person within the jurisdiction of a state can be removed therefrom depends, not on the laws of the place whence he came or in which he may have his legal domicile, but on his rights and obligations as they are fixed and determined by the laws of the state or country in which he is found."

Dorman v. Friendly, 146 Fla. 732, 736, 1 So. 2d 734, 736, quoting 31 C.J., Infants, section 6, page 988: "However, if the child is actually within the jurisdiction of the court, although his legal domicile is elsewhere, the court may determine conflicting claims as to his custody." The same quotation just above, in substance, in 43 C.J.S., Infants, section 5, page 52, is set out in Pelton v. Halverson, 240 Iowa 184, 190, 35 N.W. 2d 759, 762. Di Giorgio v. Di Giorgio, 153 Fla. 24, 27, 13 So. 2d 596, 597: The Florida court, in speaking of the trial court's stress on the California residence of the child, in reversing for further proceedings, said:

"This, to our mind, is one of the immaterial factors which led the trial court into error. The law is and has been from time immemorial that each state is not only empowered, but is charged with the duty, to regulate the custody of infants *within its borders. This is true even though the parents may be residents of another state. * * * For this, the residence of the child suffices, though the domicile be elsewhere.*"

Finlay v. Finlay, supra, 240 N. Y. 429, 431, 148 N.E. 624, 625, 40 A.L.R. 937, 938:

"The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. [Citing cases.] For this, the residence of the child suffices, though the domicile be elsewhere."

What the court said about domicile was not necessary to a decision as there was no issue of domicile or legal residence in the case, but the statement of Justice Cardozo has been widely quoted and accepted in custody cases such as the one before us. It has been followed in New York in such cases.

Without setting out the facts or procedure in numerous other decisions in which the facts in all material and pertinent respects, except for details, are for all practical purposes substantially like those in the case before us, in which decisions the respective courts determined the question of custody without regard to the fact that the child was domiciled in, or was a legal resident of, another state, we merely note the citations. We have placed an asterisk before the title of each case in which the court gave no controlling consideration to the violation of a court order in the removal of a minor child from a court's jurisdiction: *Jones v. Bowman, 13 Wyo. 79, 77 P. 439, 67 L.R.A. 860; People ex rel. Van Dyk v. Van Dyk, 33 N. Y. S. 2d 766, 770; *Smith v. Smith, Del. Super., 45 A. 2d 879, 880; People ex rel. Noonan v. Wingate, 376 Ill. 244, 33 N.E. 2d 467, 471; *In re Kernan, 247 App. Div. 664, 288 N.Y. Supp. 329, affirmed in 272 N.Y. 560, 4 N.E. 2d 737; *Scott v. Scott, supra, Ind., 86 N.E. 2d 533; *Ex parte Peddicord, supra, 269 Mich. 142, 256 N.W. 833; *Avenier v. Avenier, Tex. Civ. App., 216

S.W. 2d 638, 642; *Goldsmith v. Salkey, 131 Tex. 139, 112 S.W. 2d 165, 169, 116 A.L.R. 1293; *State ex rel. French v. French, 182 Tenn. 606, 188 S.W. 2d 603, 605, 606; In re Petition for guardianship of Hubbard, infants, 82 N. Y. 90, 93; Rogers v. Commonwealth, 176 Va. 355, 11 S.E. 2d 584, 586; In re Bopp, 58 N.Y.S. 2d 190, 196, 197; *Haynie v. Hudgins, 122 Miss. 838, 85 So. 99; *Cook v. Cook, 77 U.S. App. D.C. 388, 135 F. 2d 945, 946, 947; Ex parte Memmi, 80 Cal. App. 2d 295, 181 P. 2d 885; Black v. Adams, Tex. Civ. App., 214 S.W. 2d 703, 704; *Boone v. Boone, 76 U.S. App. D.C. 399, 132 F. 2d 14, 15, 16; Bowman v. Bridges, Tex. Civ. App., 220 S.W. 2d 512, 514; *Kirk v. Kirk, 80 U. S. App. D.C. 183, 150 F. 2d 589, 590; *In re Rosenthal, 103 Pa. Super. 27, 157 A. 342, 344, 345; *Commonwealth ex rel. Sage v. Sage, 160 Pa. 399, 28 A. 863; In re Bort, supra, 25 Kan. 308, 37 Am. Rep. 255; *Commonwealth ex rel. Rogers v. Daven, 298 Pa. 416, 148 A. 524; Campbell v. Storer, 101 Tex. 82, 104 S.W. 1047, 1048; *Ferguson v. State ex rel., 251 Ala. 645, 38 So. 2d 853; In re Pratt, 219 Minn. 414, 18 N.W. 2d 147, 153; *Mylius v. Cargill, 19 N. M. 278, 142 P. 918, L.R.A. 1915B 154, Ann. Cas. 1916B 941; People ex rel. Allen v. Allen, 105 N. Y. 628, 11 N.E. 143, 144; Hartman v. Henry, 280 Mo. 478, 217 S.W. 987, 988; Butler v. Butler, 83 N. H. 413, 143 A. 471, 473; *Sheehy v. Sheehy, 88 N. H. 223, 186 A. 1, 3, 107 A.L.R. 635, 637; *White v. White, 77 N. H. 26, 86 A. 353, 355, 356; *Boone v. Boone, 80 U. S. App. D.C. 152, 150 F. 2d 153; *Wicks v. Cox, 146 Tex. 489, 208 S.W. 2d 876, 4 A.L.R. 2d 1; *Commonwealth ex rel. Pukas v. Pukas, 164 Pa. Super. 488, 66 A. 2d 315; *Commonwealth ex rel. McTighe v. Lindsay, 156 Pa. Super. 560, 40 A. 2d 881, 882; *Langan v. Langan, 80 U. S. App. D.C. 189, 150 F. 2d 979; *Griffin v. Griffin, 95 Or. 78, 187 P. 598; *In re Leete, 205 Mo. App. 225, 223 S.W. 962, 967, 968; *People ex rel. Wagner v. Torrence, supra, 94 Colo. 47, 27 P. 2d 1038; *Crowell v. Crowell, 184 Or. 467, 198 P. 2d 992; *Gaunt v. Gaunt, 160 Okla. 195, 16 P. 2d 579; Eddy v. Staufer, 160 Fla. 944, 37 So. 2d 417; New York ex rel. Halvey v. Halvey, 330 U. S. 610, 67 S. Ct. 903, 91 L. Ed. 1133. See also Restatement of the Law, Conflict of Laws, section 148.

In some of the citations noted above the matter of jurisdiction is not mentioned, but as said in Haynie v. Hudgins, supra,

122 Miss. 838, 858, 85 So. 99, 103, "* * * it will be remembered that this question is always a preliminary question for the consideration of the court, and by passing upon the merits of the cases the courts thereby held that they had jurisdiction of the controversy."

In Barnett v. Blakley, supra, 202 Iowa 1, 209 N.W. 412, the custody of a minor child was involved. While there were some factors therein not present in the case on appeal, yet it gives support to the decision of the trial court and to our conclusions. In that case the child was taken by stealth by each of the parents but neither the trial court nor this court gave any effect to the misconduct.

Plaintiff has cited Ex parte Burns, 194 Wash. 293, 77 P. 2d 1025; Motichka v. Rollands, 144 Wash. 565, 258 P. 333; In re Mullins, 26 Wash. 2d 419, 174 P. 2d 790; In re Guardianship of Simpson v. Simpson, 87 Cal. App. 2d 848, 197 P. 2d 820; Cusack v. Cusack, Tex. Civ. App., 107 S.W. 2d 1021; Peacock v. Bradshaw, 145 Tex. 68, 194 S.W. 2d 551; Chapman v. Walker, 144 Okla. 83, 289 P. 740; State ex rel. Larson v. Larson, 190 Minn. 489, 252 N.W. 329; McKee v. McKee, 239 Iowa 1093, 32 N.W. 2d 379; New York ex rel. Halvey v. Halvey, supra. These cases are of little aid to plaintiff. The authority of the Texas citations are much weakened by the later decisions of the Texas courts, particularly Wicks v. Cox, supra, 146 Tex. 489, 208 S.W. 2d 876, 4 A.L.R. 2d 1. In the Minnesota case the mother violated the Iowa decree in refusing to return the child to its · father, but the court disregarded it and awarded the custody of the child to her because it was to the best interests of the child on account of changed conditions. Ex parte Burns and McMillin v. McMillin are not adverse to this defendant's contentions. The McKee case and the Halvey case do not help or hurt either party in this case. So far as any of the cases relied upon by the plaintiff may be adverse to the defendant we think they are opposed to the great weight of authority.

There is an interesting discussion of some of the questions here involved in the case of Sampsell v. Superior Court in and for Los Angeles County, 32 Cal. 2d 763, 778, 779, 197 P. 2d 739, 748, 749, 750—quoting from Stansbury, Custody and Mainte-

nance Law Across State Lines, 10 Law and Contemp. Prob. *819, 830*:

" 'From a standpoint of expediency and of achieving socially desirable ends, there seems to be only one argument in favor of confining jurisdiction to a single state; that it will produce stability and discourage the crossing of state lines to avoid the effect of unpalatable custody decrees.' [The opinion continues] : It is doubtful, however, whether the best interest of the child, the paramount consideration in custody proceedings, is served thereby.

"There is authority for the proposition that courts of two or more states may have concurrent jurisdiction over the custody of a child. (Finlay v. Finlay, 240 N. Y. 429, 431, 148 N.E. 624, 40 A.L.R. 937, [and other cases cited].) In the interest of the child, there is no reason why the state where the child is actually living may not have jurisdiction to act to protect the child's welfare, and there is likewise no reason why other states should not also have jurisdiction. * * *

"Thus, if the child is living in one state but is domiciled in another, the courts of both states may have jurisdiction over the question of its custody. It does not follow, however, that the courts of both states will exercise that jurisdiction and reach conflicting results."

As stated in Butler v. Butler, supra, 83 N. H. 413, 416, 143 A. 471, 473:

"The courts of the state of the current situs of the child are ordinarily in a position to exercise their jurisdiction more beneficially and more effectively than those of any other state (Dixon v. Dixon, 76 N. J. Eq. 364), [74 A. 995], and may be safely trusted to safeguard the welfare of the child if changed circumstances have made a new or modified order necessary. Failure of a custodian, wherever appointed, in performance of the imposed trust, would constitute such a change."

The same view is stated in Wicks v. Cox, supra, 146 Tex. 489, 208 S.W. 2d 876, 878, 4 A.L.R. 2d 1.

The plaintiff would have us say that the trial court had no jurisdiction to even look into the circumstances or have a hearing

with respect to changed circumstances. He asked the court to award the custody of the child to him, but to make no inquiry as to whether such custody was for the children's best interests. This is an extreme position. The Supreme Court of California answered this contention in Titcomb v. Superior Court, 220 Cal. 34, 39, 29 P. 2d 206, 209, thus: "If it appears that the circumstances upon which the prior order of another state is based have not changed, our courts, on principles of comity, may refuse to decree a change of custody, *but the decree of the other state is never a bar to inquiry as to the best interests of the child.*" (Italics ours.) The quotation was repeated with approval in Foster v. Foster, 8 Cal. 2d 719, 728, 68 P. 2d 719, 723. The same thought is stated in Smith v. Smith, supra, 4 Terry (Del. Super.) 268, 45 A. 2d 879, 881.

VI. Another circumstance urged by plaintiff as a reason why the trial court had no jurisdiction, or if it did, that it should not have exercised it because of comity, is the fact that defendant without permission of the Missouri court brought the children into Iowa and kept them here. The point needs but little more comment. As appears in Division V hereof this fact has been present in many child-custody cases and has been given little consideration or weight either on the issue of jurisdiction or on the issue of the fitness of the offending parents as custodians. There is sound reason for such attitude by the courts, and it is in complete accord and compliance with the controlling and ultimate consideration—what is best for the child? He should not suffer or be penalized or discriminated against because of the indiscretion or offense of his parent. The child is innocent of any wrong. The children in this case are lawfully in Iowa. They are neither offenders in any respect, nor contraband property, and are entitled to the care and protection of the State, and of its courts. This is the position uniformly taken by the courts. The Colorado court in People ex rel. Wagner v. Torrence, supra, 94 Colo. 47, 51, 27 P. 2d 1038, 1039, asked and answered the question thus: "Is the interest and welfare of the children to be thus determined and possibly jeopardized on account of parental indifference to an order prohibiting removal from the state? We think not." The New Hampshire court in Sheehy v.

Sheehy, supra, 88 N. H. 223, 225, 186 A. 1, 3, 107 A.L.R. 635, 639, said:

"Furthermore, since the welfare of the child is the controlling consideration and since it is not chargeable with its parent's misconduct, this jurisdiction will be exercised even though the child was brought to this state by its parent fraudulently, and for the purpose of conferring jurisdiction over the question of custody, provided, however, that the child is, as in this case, too young to decide what is best for its own welfare."

The same thought was expressed more fully in White v. White, 77 N. H. 26, 86 A. 353, 355, 356. In Commonwealth ex rel. Rogers v. Daven, supra, 298 Pa. 416, 423, 148 A. 524, 527, the Pennsylvania court said: "That the respondent, Mrs. Bryant, surreptitiously removed her children from North Carolina in violation of an order of the juvenile court is important here only in so far as it may have a bearing upon her fitness to be awarded their custody.". In Smith v. Smith, supra, 4 Terry 268, 274, the Superior Court of Delaware, 45 A. 2d 879, 881, said:

"Ordinarily a man should not be permitted to take advantage of his own wrong-doing, but this principle must not be allowed to interfere with the basic rule that the child's welfare is the primary consideration in any case involving its custody. A court cannot determine what is best for the child without hearing all the pertinent facts and testimony concerning present conditions."

In Commonwealth ex rel. Pukas v. Pukas, supra, 164 Pa. Super. 488, 491, 66 A. 2d 315, 317, the court said:

"Against her is the record of two 'kidnappings' of the child * * * but this can be explained and palliated as a compelling emotional pressure of a mother's love and yearning for her child. Even if it were viewed as a serious past dereliction it would not stand as an insuperable obstacle to her claim to the custody of a child of tender years."

In Commonwealth ex rel. McTighe v. Lindsay, supra, 156 Pa. Sup. 560, 563, 40 A. 2d 881, 882, the court said:

"We note, but merely to exclude from the scope of our decision, the questionable methods pursued by both parties to secure or retain possession of the child. We can well understand that they were animated by excessive zeal which overcame sound judgment."

In Langan v. Langan, supra, 80 U. S. App. D. C. 189, 150 F. 2d 979, 983, the offending father, to whom the custody of the child was awarded by the trial court (Associate Justice T. Alan Goldsborough), had twice violated custodial orders of a court. The able United States Court of Appeals of the District of Columbia, in affirming, said:

"We cannot close our opinion, however, without the following observations. Appellee in this case is twice in contempt of court. He has, perhaps, been poorly advised and may have acted unwisely in his efforts to protect his daughter, with the result that he now faces possible punishment for contumacy in California and in Maryland. Presumably he could have applied to the California court for modification of its order; he could have initiated an action in Maryland in the name of the child to determine its custody, even while the habeas corpus proceeding [of the wife] was pending in that State. As we said, recently, in another case [Boone v. Boone, 80 U. S. App. D. C. 152, 150 F. 2d 153, 155, supra], we do not for a moment sanction kidnapping or encourage contempt of court; but these considerations were not directly before the trial court and were not noticed by it. Consequently they are not before us for decision and we speak of them merely to keep clear the record of our own action. We leave to the proper authorities the question of discipline for appellee, if discipline is necessary."

In Boone v. Boone, supra, 150 F. 2d 153, 155, referred to in the preceding citation, the court said:

"Although the present proceeding is in the name of the children, appellant's argument is pitched, largely, upon the adversary rights of the parents; much weight is given to judgments entered, orders issued and disobeyed. We may as well recognize that such considerations are very unreal in the case of parents and children. In doing so we do not for a moment sanction

kidnapping or encourage contempt of court. The important consideration is that when a court is confronted with a question of custody, it is required to act as parens patriae. Under such circumstances, children cannot be used as pawns in a game of legal chess to work out conceptions of status and property rights." (Citing cases.)

There is no evidence that defendant gave any thought to legal procedure or to the matter of jurisdiction. She alleged that she took the children in good faith and only for their best welfare. We may assume there was evidence to sustain the allegation in view of the trial court's findings and decree. What she did was openly done. There was nothing secretive or clandestine. She kept no one in suspense, but promptly telephoned the Welfare Office at Trenton, Missouri, what she had done and what her intentions were. We conform to the great weight of authority in holding that the defendant's taking of the children in no way bears upon the issue of jurisdiction.

Plaintiff's counsel have suggested, but with no serious conviction we are sure, that if the decree appealed from is affirmed, and the children are "kidnapped" into Missouri, the courts of that state may retaliate. We sincerely hope that there will be no further litigation. But if there should be, all concerned may rest assured that the courts of our sister state will be guided and controlled in any decision only by the highest good for these children. Courts do not seek the opportunity of trying child-custody cases. "Of all the questions with which a court of justice is required to deal, that of the custody of [minor] children is the most difficult." (Ex parte Agnello, 72 N. Y. S. 2d 186, 191.) The Missouri Appellate Court in In re Krauthoff, supra, 191 Mo. App. 149, 151, 177 S.W. 1112, 1113, has so expressed itself:

"It is an unwelcome task fraught with heavy responsibility. * * * It is a painful duty, from which every well-regulated mind must shrink since its performance has to do not only with the tender relations of parent and child, but involves the future course of a human life, and perhaps may have an influence upon the destiny of an immortal soul."

VII. What we have said herein applies also to the issue of comity. The State of Iowa and its courts recognize and

respect the principles of comity governing the relations between this State and other states and nations, unless prevented by some public policy. But as already stated herein the Missouri decree which plaintiff urges is binding on the Iowa courts is limited in its effect to only those facts and conditions on which the decree was based. It has no binding force on the Iowa courts as to facts and conditions which arose thereafter, and were in existence when the trial court rendered its decree. The doctrine of comity has no controlling application in the case before us. In Hanrahan v. Sears, 72 N. H. 71, 72, 54 A. 702, 703, the court said: "If by comity the rights of a foreign guardian may be recognized in our courts, they cannot be allowed to prevail in opposition to the legal and equitable rights of the ward while within this jurisdiction." In Woodworth v. Spring, supra, 4 Allen (Mass.) 321, 323, the court said: "The comity of a state will give no effect to foreign laws which are inconsistent with or repugnant to its own policy, or prejudicial to the rights and interests of those who are within its jurisdiction." In People ex rel. Van Dyk v. Van Dyk, supra, 33 N. Y. S. 2d 766, 773, the court said:

"But there is a further reason, in my opinion, why the rule of comity is not applicable here, and it is that in proceedings of this nature, the sole concern of the court in whose jurisdiction the child may be is 'what will be for the best interest of the ward under all the circumstances? It should control everything else.' In re Stockman, 71 Mich. 180, 38 N.W. 876, 881."

In the last-cited case the Michigan court said:

"Comity cannot be considered in a case like this, when the future welfare of the child is the vital question in the case. The good of the child is superior to all other considerations. It is the polar star to guide to the conclusion in all cases of infants, whether the question is raised upon a writ of habeas corpus or in a court of chancery." At page 193 of 71 Mich., page 882 of 38 N.W.

In the Van Dyk case, supra, the court continued:

"On the question as to how much importance should be placed upon foreign judgments where the welfare and interests

of children are under consideration, People ex rel. Allen v. Allen, 105 N..Y. 628, 11 N.E. 143, 144, is enlightening and informative. The court said: 'We dismiss this appeal for the reason that the courts below, upon a view of all the existing facts relating to the welfare and interests of the infants, exercised their discretion in awarding to the mother the custody of the children; and in so doing .gave to the Illinois decree not the force of an estoppel, or the conclusive effect sometimes due to a judgment, but simply regarded it as a fact or circumstance bearing upon the discretion to be exercised, without dictating or controlling it.' * * * [page 774] Clearly, the rule of comity is not controlling upon such an application as this."

The same thought is expressed in People ex rel. Noonan v. Wingate, supra, 376 Ill. 244, 33 N.E. 2d 467, 471; Ex parte Leu, 240 Mich. 240, 215 N.W. 384, 386; Jones v. Bowman, supra, 13 Wyo. 79, 77 P. 439, 67 L. R. A. 860. In Butler v. Butler, supra, 83 N. H. 413, 415, 143 A. 471, 473, the court said: "* * * it is sufficient that, under the principles of comity customarily exercised among the states, the courts of each will give appropriate force to the official character of a custodian appointed in another state, and recognize him in the absence of changed conditions * * *. While jurisdiction to modify an order for custody, as a legal consequence, continues in the court of the state where it is made * * * nevertheless, upon proof that the custodian of a .child is unfit to continue to have the control of the child, the child may be taken from him and be given to another person *by the courts of any state into which the child may have come.*" (Italics ours.)

The decree of the able trial court is sound upon the facts, so far as they are disclosed, and upon the law. These little girls had been cared for by the defendant until taken from her by the Missouri decree. As said by Justice Brewer in In re Bort, supra, 25 Kan. 308, 311, 37 Am. Rep. 255, 258: "They are of that tender age when they need a mother's care. No stranger, however kind, can fill her place." No one can take the place of a mother in the life of a little girl.

The judgment and decree is—Affirmed.

Justices HALE, OLIVER, GARFIELD, MULRONEY, and MANTZ concur.

Justices HAYS and WENNERSTRUM dissent.

HAYS, J. (dissenting)—I am unable to agree with the result announced in the majority opinion, and respectfully dissent.

The majority opinion holds that the trial court had jurisdiction to hear and determine the issues present, and I agree. It is a habeas corpus action. The corpus is the two minor children. They were actually before the trial court at the time of the hearing, this being the basic requirement for jurisdiction to try the issues raised.

The majority opinion also holds that the full faith and credit clause is not a bar to jurisdiction, and with this I agree. Assuming that this clause is applicable, it is not jurisdictional but rather a limitation upon what action the courts may take. The limitation is that there must be a change of conditions since the original decree, before the decree may be ignored. In this case we must assume the fact of changed conditions. In the instant case the full faith and credit clause does not even constitute a limitation.

However, appellant asserts that on the theory of comity the trial court should have refused to ignore the Missouri decree even in the face of the changed conditions and should leave the question for the determination of the Missouri courts. The majority says no, and with this I disagree.

Comity is the recognition which one Nation allows within its territory to the legislative, executive and judicial acts of another Nation, having due regard both to the international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. Hilton v. Guyot, 159 U. S. 113, 16 S. Ct. 139, 40 L. Ed. 95; In re Fischer's Will, 119 N. J. Eq. 217, 181 A. 875. It is not a rule of law but of practice, convenience and expediency. It does not declare how a case shall be determined but how it may with propriety be decided.

The polar star in this type of litigation—custody of children —is the best interest of the children. It is clearly not only the right but the duty of the courts of this state to safeguard the rights of its citizens and persons legally within its boundaries. The rule announced in the majority opinion, while apparently in accord with the weight of authority, goes beyond that. It is

an' open invitation to divorced parents, who have had their day in a court of competent jurisdiction, to bring by stealth or force into this state, children to whose custody they have been denied and thus avoid the effect of a legal decree. By this rule the status of the child is constantly in doubt, depending upon the views of the court before whom it may happen at the time to be. This is not, in my judgment, conducive to the best interest of the child. If the custody, as provided in the decree, is not proper we must assume that the court making such order is just as anxious to protect the child as is the court of this state, and that upon proper application a change would be made.

The rule announced in In re Mullins, 26 Wash. 2d 419, 443, 174 P. 2d 790, 803, appears to me to be sound. It is:

"We now hold that the decrees of a court of a sister state must be given full credit in cases in which the court of the sister state has jurisdiction, and that we will not consider the change of custody of children whose custody has been determined by that decree, until such time as the children become domiciled in this state," and at page 445 of 26 Wash., page 804 of 174 P. 2d: "All reasonings and ideas of fair play and justice demand a holding that a parent acting in disobedience to an order of a court cannot secure a new domicile for his or her child."

I should like to see this court adopt the domicile rule as a basis for action in this type of cases and believe that thereby, the best interest of the child would be preserved. I would reverse the trial court.

WENNERSTRUM, J., joins in this dissent.